Daniel Lehman, demandante y recurrido, *v.* Ehret, Inc., demandada y recurrente; Ehret, Inc., peticionaria, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Ramón Negrón Soto, Juez, demandado.

*Números:* R-72-154, O-74-21    *Resueltos:* 20 de enero de 1975

*Leopoldo Tormes García,* abogado de la recurrente y peticionaria; *José Rafael Capó,* abogado del recurrido e interventor.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

■ La recurrente Ehret, Inc., impugna en el recurso R-72-154 la conclusión del tribunal de instancia sosteniendo que el querellante recurrido Daniel Lehman era un empleado y no un ejecutivo, ([1]) y asumiendo la corrección de esta conclusión, cuestiona la determinación de que éste trabajó horas extras compensables bajo la norma de "tiempo sujeto a ser llamado" expuesta en *Deyá* v. *Otis Elevator Co.*, 91 D.P.R. 669 (1965). El O-74-21 impugna las costas concedidas por el tribunal de instancia.

Examinemos en primer término los méritos de la querella. Alegando ser un empleado, Daniel Lehman radicó una querella contra Ehret, Inc., reclamando, en síntesis, el pago de horas extras trabajadas y vacaciones adeudadas. Esta planteó como defensa, entre otras, que el querellante cualificaba como ejecutivo y por lo tanto, no tenía derecho al pago de horas extras, aun bajo el supuesto de que las hubiese trabajado lo cual también negaba.

La ilustrada Sala sentenciadora, en una extensa y documentada opinión concluyó, que con excepción del requisito referente al salario, el querellante no reunía las demás condiciones necesarias para ser considerado un *ejecutivo* o *administrador* según las definiciones de tales términos

---

([1]) El Art. 5 de la Ley Núm. 379 de 1948, según enmendada (29 L.P.R.A. sec. 274), dispone que todo patrono que emplee o permita que un empleado trabaje durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares.

La Ley Núm. 289 de 1946, en su Sec. 4 (29 L.P.R.A. sec. 298), recoge la norma de que horas trabajadas por un empleado durante su día de descanso, deben ser pagadas a un tipo de salario igual al doble del tipo convenido para las horas regulares.

Estas disposiciones no aplican a las personas empleadas como profesionales, ejecutivos y administradores, quienes están excluidas en virtud del Art. 19 y la Sec. 5 respectivamente de las leyes previamente mencionadas. Véase *López Vega* v. *F. Vega Otero, Inc.*, 103 D.P.R. 175 (1974).

contenidas en el Reglamento aprobado por el Secretario del Trabajo de Puerto Rico. (29 R.&R.P.R. secs. 286–3 y 286–4.) Condenó a la recurrente a satisfacer la suma de $10,294.24, igual cantidad de penalidad y $3,000.00 en concepto de honorarios de abogado.

No es necesario el examen individual y detallado de los errores señalados por la recurrente ni la determinación de si era aplicable al caso de autos la norma de *Deyá,* supra, pues la evidencia demuestra que Lehman para los años 1967 y 1968—período para el cual el tribunal le concede compensación por tiempo de espera—era un *administrador* al amparo de la definición existente en el Reglamento antes mencionado.

El tribunal de origen erróneamente entendió que por haber concluido que el querellante no era ejecutivo ". . . menos aún podía ser administrador." Al así hacerlo, hizo caso omiso a las diferencias existentes entre las definiciones y funciones correspondientes a un ejecutivo y un administrador, y en última instancia, a las dos modalidades reconocidas en el Reglamento sobre este último cargo. (²)

Sobre el particular, el aludido cuerpo reglamentario dispone lo siguiente:

"§ 286–4. Definición de 'administrador'

A los fines del art. 19 de la Ley Núm. 379 de 15 de mayo de 1948 [29 L.P.R.A. sec. 288] y de la sec. 5 de la Ley Núm. 289 de 9 de abril de 1946, según enmendada por la Ley Núm. 130 de 27 de abril de 1950 [29 L.P.R.A. sec. 299] el término 'administrador' significa:

(1) En actividades comerciales o manufactureras.

(A) (i) Cualquier empleado cuyo deber *primordial* consista en *desempeñar trabajo de oficina o trabajo fuera de oficina* que no sea de naturaleza manual, *estando uno u otro trabajo directamente relacionado con las normas* de la dirección de la

---

(²) A nivel federal, donde subsiste igual reglamentación se ha señalado las diferencias existentes, aun cuando se reconoce que ambas definiciones en algunos extremos tienen características comunes. 40 A.L.R.2d: Anno: *Wages and Hours, Executives,* págs. 378–404.

empresa o *con las operaciones generales* del negocio del patrono o de los clientes del patrono; y

(ii) *que habitual o regularmente ejerza discreción y juicio independiente;* y

(iii) (a) que regular y directamente ayude al dueño o a uno de los dueños de la empresa, o a una persona empleada en la capacidad de 'ejecutivo' (según este término se define en la sec. 286–3 de este título, párr. (A) y (B) del apartado (1)); ó

(b) que realice bajo solamente supervisión general trabajo de carácter técnico y especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

(c) que ejecute bajo supervisión general solamente encomiendas y tareas especiales; y

(iv) que no dedique más del 20 por ciento de las horas trabajadas en una semana de labor a actividades que no estén directa y estrechamente relacionadas con el desempeño del trabajo descrito en el párr. (A), (i) al (iii) de este apartado; y

(v) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores), o a base de por ciento u honorarios, equivalente a un sueldo *mensual* no menor de $200, excluyendo alimentos, vivienda u otros servicios; o

(B) (i) *Cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en el párr. (A), (i) y (ii) de este apartado;* y

(ii) que reciba por sus *servicios una compensación fija* (por día, *semana,* quicena o períodos mayores), o a base de por ciento u honorarios, equivalente a un salario semanal no menor de *$100,* excluyendo alimentos, vivienda u otros servicios." (Énfasis suplido.)

Bajo la modalidad descrita en el inciso (B) del Reglamento, procede que analicemos la conclusión de derecho del ilustre juez sentenciador en el sentido de que Lehman no era un administrador.

Tanto la sentencia como la prueba aportada reflejan que el trabajo que Lehman desempeñaba para los años en que se

sostuvo compensabilidad por tiempo de espera era principalmente de oficina como lo reconoce su propio testimonio:

"P. A base de su experiencia, testigo, ¿qué por ciento de labor manual hacía usted en su trabajo? ¿O una persona como usted en un trabajo similar?

Lic. Tormes García: Nos estamos refiriendo a él.

Hon. Juez: Eliminada la última parte.

R. Mis responsabilidades en Aibonito requerían que trabajara de un cuarenta a un cuarenticinco por ciento de labor manual porque teníamos que cortar bastante madera para hacer los ataúdes y ensamblar los ataúdes; hacer reparaciones en el edificio, lavar los carros y brillarlos y limpiar la casa; tener preparado el equipo, limpio el equipo de cementerio y tenerlo preparado. Todo esto estoy seguro que por lo menos requería cuarenticinco de la labor manual." (T.E. pág. 312, taquígrafo Sr. Rafael Perocier.)

■ De lo anterior se deduce claramente que Lehman invertía entre un 55 a 60 por ciento del tiempo en tareas no manuales en la dirección y las operaciones generales de la funeraria de la cual estuvo a cargo realizando en tal capacidad las siguientes faenas:

(1) Supervisaba y dirigía las labores del empleado permanente, a tiempo completo que había, y de aquellos otros que por tiempo parcial ocasionalmente contrataba y despedía.

(2) Atendía los clientes, suministraba información y concedía o denegaba crédito por servicios funerales. (T.E. págs. 187 a 188.)

(3) Recibía pagos por servicios a clientes y gestionaba el cobro de los mismos.

(4) Supervisaba y dirigía los servicios funerarios, coordinando con los cementerios, iglesias, etc. todo lo relativo a tales servicios. (T.E. pág. 172.)

(5) Disponía del mantenimiento y la compra de materiales necesarios para las facilidades físicas de la funeraria y de los ataúdes.

(6) Estaba autorizado a girar cheques contra la cuenta de la querellada en Aibonito, en unión a otra persona.

(7) Tenía disponible y utilizaba discrecionalmente un fondo de $100.00 en efectivo para asuntos misceláneos (*petty cash*).

(8) No tenía horario fijo ni persona que lo supervisara, pudiendo disponer de su tiempo conforme su mejor criterio.

(9) Se dedicaba colateralmente al negocio propio de venta de flores y coronas y al del alquiler de oxígeno, sillas de ruedas y camas de posición, para cuya transportación utilizaba sin límites los empleados y vehículos de la funeraria. También explotaba una finca que tenía destinada a la crianza de pollos.

El desempeño de las funciones enumeradas, distinto a la conclusión del tribunal de instancia, requieren el ejercicio constante de discreción y juicio independiente.

Bajo la modalidad del Reglamento que nos ocupa, es necesario que se cumpla con el requisito de una compensación de $100.00 semanales excluyendo alimentos, vivienda y otros servicios. La sentencia reconoce que "Desde el 23 de abril de 1962 hasta el 1963 el querellante tuvo un salario de $75.00 semanales; durante el año 1964 devengó uno de $100.00 semanales; durante los años 1965 y 1966 uno de $115.00 semanales; y durante los años 1967 y 1968, específicamente hasta el 31 de octubre de ese año, fecha en que cesó de trabajar, uno de $135.00 semanales." Estas sumas las recibió Lehman con exclusión del apartamento que ocupaba con su familia, el cual tenía teléfono, electricidad y agua, y por cuyos servicios y facilidades nada tenía que pagar.

■ Resolvemos que los requisitos enunciados en el apartado (B) del Reglamento estaban presentes en el caso que nos ocupa y que Lehman era un administrador desde el año 1964, no estando en consecuencia sujeto a las disposiciones de las leyes laborales referentes a tiempo extra, doble penalidad y demás beneficios. Esta conclusión se impone, aun interpretando restrictivamente tal exclusión.

En virtud de lo expuesto *debe modificarse la sentencia, como se modifica, a los fines de conceder compensación exclusivamente por la suma total de $600.00,* ([3]) *las costas del proceso y $500.00 de honorarios.*

Sobre las costas objeto de impugnación en el *Certiorari* O-74-21, vistas las partidas, ([4]) las mismas son procedentes por lo que estimamos que el recurso fue expedido indebidamente. *Pereira* v. *I.B.E.C.,* 95 D.P.R. 28 (1967) ; *Garriga,* Jr. v. *Tribunal Superior,* 88 D.P.R. 245 (1963). *Deberá anularse el auto de Certiorari expedido en 13 de febrero de 1974.*

---

([3]) Se desglosa en $150.00 por dos semanas más la penalidad correspondiente por vacaciones no pagadas el año 1962 durante la época en que no era un administrador, y $300.00 por tres semanas de vacaciones durante el año 1965; esta última sin penalidad.

([4]) Son objeto de impugnación los gastos de pasajes del querellante, de un traductor y los relacionados con una deposición incluyendo los del notario autorizante.