Broco Oliveras, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
En el presente recurso de apelación se recurre de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que declaró no haber lugar a una querella presentada por los apelantes al amparo de la Ley de Horas y Días de Trabajo, 29 L.P.R.A. sec. 271 et seq., y la Ley de Salario Mínimo, 29 L.P.R.A. sec. 245 et seq.
El tribunal a quo determinó, entre otras cosas, que los querellantes estaban exentos de los beneficios establecidos en ambas leyes por considerar que éstos eran ejecutivos y llevaban a cabo funciones gerenciales aún cuando realizaron labores del personal unionado que se encontraba en *1123 huelga.
Por entender que no se cometieron los errores imputados, procede confirmar la sentencia.
I
Los hechos del presente recurso se remontan a la fecha del 15 de febrero de 1985 cuando los empleados unionados "croupiers" del casino decretaron una huelga. Ante esta situación de emergencia y en medio de la temporada alta de turismo, la administración del hotel decidió mantener las operaciones del casino contando con la cooperación del personal gerencial asignado aLmismo y del personal administrativo de otras dependencias del hotel. Del propio expediente que obra en autos se desprende que el hotel le facilitó varias habitaciones a aquellos supervisores y gerentes que desearan quedarse en el lugar y evitar así cruzar la línea de piquete. La huelga tuvo una duración aproximada de seis meses.
El 15 de junio de 1991 los apelantes presentaron una reclamación ante el Tribunal de Primera Instancia alegando que, como producto de la huelga decretada, la administración del hotel les requirió que realizaran varias labores asignadas al personal unionado con el fin de mantener-operando el casino.
En la querella, los empleados gerenciales y supervisores adujeron que le correspondía al hotel indemnizarles por las horas en exceso trabajadas a las cuarenta horas semanales que dispone la ley, por los períodos para tomar alimentos trabajados e igualmente por los días de descanso trabajados.
Luego de varios incidentes procesales surgió una controversia sobre si procedía extender la interpretaciónde las alegaciones de la querella para incluir el período anterior a la huelga. El tribunal apelado resolvió que el lenguaje utilizado por la parte querellante en sus alegaciones demostraba que la reclamación estaba limitada al período que duró la huelga. Posteriormente, y ya en la vista en su fondo celebrada los días 14 y 15 de noviembre de 1995, la parte querellante intentó enmendar las alegaciones por la prueba lo cual fue oportunamente objetado por la otra parte. El tribunal a quo no permitió las enmiendas por considerarlas tardías y se sostuvo en lo resuelto en su resolución de 30 de agosto de 1995 a esos efectos.
La vista estuvo limitada a esclarecer si los apelantes perdieron su condición de empleados exentos de los beneficios de estas leyes laborales por el trabajo realizado durante la huelga. El tribunal apelado resolvió en la negativa y dictó sentencia declarando sin lugar la querella. En ésta determinó que los querellantes nunca perdieron su carácter de gerenciales porque continuaron ejerciendo funciones administrativas y/o ejecutivas durante la huelga según la definición del Reglamento Núm. 13 de 1982 de la Junta de Salario Mínimo.
Igualmente resolvió el tribunal a quo que bajo el Fair Labor Standards Act, 29 U.S.C. sec. 201, y bajo el Reglamento Núm. 13 antes citado, un empleado que ejerce funciones gerenciales no tiene derecho a compensación por tiempo extra. Por último, expone la sentencia que una-huelga es una situación de emergencia donde el patrono puede descansar en sus empleados gerenciales y ejecutivos para mantener su negocio operando.
Inconforme con la sentencia, la parte querellante-apelante imputa al tribunal apelado la comisión de los siguientes errores:

"Primer Error:

Erró el Honorable Tribunal de Primera Instancia cuando determinó que los apelantes están exentos de la Ley de Horas y Días de Trabajo, durante el período de huelga en el cual desempeñaron únicamente labores manuales y oficinescas.

Segundo Error:

Erró el Honorable Tribunal de Primera Instancia al concluir, que una huelga■ anticipada y provocada por el patrono, que duró unos seis (6) meses, es una situación de emergencia que impide *1124 que los querellantes tengan derecho al pago de horas extras.

Tercer Error:

Erró el Honorable Tribunal de Primera Instancia al concluir que los apelantes no podían enmendar la demanda para aclarar que, aunque ostentaban títulos gerenciales, no lo eran conforme a derecho desde antes de empezar oficialmente la huelga."
II
La Ley de Horas y Días de Trabajo, supra, establece en el Art. 5, 29 L.P.R.A. sec. 274, que todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido por las horas regulares. Por otro lado, el Art. 14, 29 L.P.R.A. sec. 283, dispone que todo patrono que emplee o permita que un empleado trabaje durante el período destinado para tomar alimentos vendrá obligado a pagarle por dicho período o fracción del mismo un tipo de salario igual al doble del tipo convenido para las horas regulares.
No obstante, es en la propia ley donde se excluye a los ejecutivos, administradores y profesionales de la compensación dispuesta para los casos anteriores. En síntesis, el Art. 19, 29 L.P.R.A. see. 288, reza de la siguiente manera: la palabra "empleados" no incluirá ejecutivos, administradores ni profesionales, según estos términos sean definidos por la Junta de Salario Mínimo de Puerto Rico, así como tampoco a los oficiales u organizadores de uniones obreras cuando actúen como tales. Por lo tanto, las disposiciones antes citadas sobre horas extras y hora de tomar alimentos no aplican a este grupo de empleados. Lehman v. Ehret, Inc., 103 D.P.R. 264 (1975). Así también lo resolvió el Circuito Regional VII (Carolina y Fajardo) de este Tribunal en el caso Rolón García v. otros v. Charlie Car Rental, Sentencia de 13 de noviembre de 1997, Núm. KLCE-96-00701.
El Reglamento Núm. 13, Tercera Revisión de 1982, de la Junta de Salario Mínimo define "administrador" como cualquier empleado que reúna los siguientes requisitos:

"(a) que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono; y

(b) que usual y regularmente ejerza discreción y juicio independiente; y

(c) 1- que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos términos se definen en el presente reglamento; o

2- que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

3- que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y

(d) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40%, de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en el Apartado A - Incisos (a), (b) y (c) de este Artículo III; y

(e)que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de ciento treinta y cuatro ($134) dólares, excluyendo alimentos, vivienda u otros servicios. También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos ($200) dólares, excluyendo alimentos, vivienda u otros servicios."

El Art. IV del mismo reglamento antes citado define ejecutivo como cualquier empleado que reúna *1125 los siguientes requisitos:

"(a) que tenga por deber primordial la dirección de la empresa en que trabaja o de un usualmente reconocido departamento o subdivisión de la empresa;

(b)que usual y regularmente dirija el trabajo de dos o más empleados de la empresa o departamento o subdivisión de la misma; y

(c)que tenga la autoridad de emplear y despedir empleados, o cuyas sugestiones o recomendaciones sobre el empleo, despido, mejoramiento, ascenso o cualquier otro cambio en el status de éstos hayan de recibir especial consideración, y

(d) que usual y regularmente ejerza facultades discrecionales; y

(e) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directa y estrechamente relacionadas con el desempeño del trabajo descrito en el Apartado A - Inciso (a) hasta (d) inclusive, de este Art. IV; disponiéndose que este Inciso (e) no será aplicable en el caso de un empleado que esté encargado de una empresa independiente o de una sucursal de la empresa físicamente separada del establecimiento principal de la misma, o de un empleado que sea dueño de por lo menos el 20% del capital de la empresa en la que esté trabajando; y

(f) que reciba por sus servicios una compensación fija equivalente al sueldo semanal no menor de ciento treinta y cuatro ($134) dólares, excluyendo alimentos, vivienda u otros servicios."

También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los Incisos (a) y (b) de este Artículo IV y que reciba por sus servicios una compensación fija equivalente a un salario semanal no menor de doscientos ($200) dólares, excluyendo alimentos, vivienda u otros servicios.
Este Tribunal toma conocimiento de que el reglamento citado fue sustituido por una versión más reciente aprobada el 29 de junio de 1990, Reglamento Núm. 13 de la Junta de Salario Mínimo, Cuarta Revisión. En esta nueva revisión se aumentaron las cantidades por concepto de salarios que en la Tercera Revisión eran de ciento treinta y cuatro ($134) y doscientos dólares ($200) para ambos grupos a doscientos ($200) y doscientos noventa y cinco dólares ($295) respectivamente.
Es requisito necesario de ley para que surja la condición de ejecutivo, a los fines de la Ley de Salario Mínimo, que concurran todos los requisitos que los reglamentos aprobados por la Junta de Salario Mínimo enumeran y que la exclusión de la legislación laboral sea clara. Castro Sosa, v. A.F.F., 107 D.P.R. 711 (1978); Abudo Servera v. A.T.P.R., 105 D.P.R. 728 (1977); López Vega v. F. Vega Otero, Inc., 103 D.P.R. 175 (1974); Morales v. Tribunal Superior, 84 D.P.R. 123 (1961); Piñán v. Mayaguez Sugar Co., Inc., 84 D.P.R. 89 (1961).
Por otro lado la Ley Federal de Normas Razonables de Trabajo, 29 U.S.C. see. 213 (a) (1), también excluye de su protección a aquellos empleados que desempeñan labores ejecutivas, administrativas y/o profesionales. En 29 C.F.R. sec. 541.1 se define ejecutivo prácticamente de la misma manera que bajo el Reglamento Núm. 13 de la Junta de Salario Mínimo con la excepción que en el renglón (f) la cantidad del salario mínimo requerido para ser considerado como tal es de ciento cincuenta y cinco ($155) dólares semanales o doscientos cincuenta ($250) dólares semanales. Según sea el caso. Para los empleados en las jurisdicciones de Puerto Rico, Islas Vírgenes o la Samoa Americana cuyos patronos no sean el gobierno federal las cantidades expresamente establecidas son de ciento treinta ($130) dólares y doscientos ($200) dólares.
Al determinar si un empleado u obrero es una persona empleada en una capacidad ejecutiva bona fide bajo las disposiciones del reglamento federal que instrumenta la Ley Federal de Normas Razonables del Trabajo, un tribunal debe seguir las normas que se establecen en 29 C.F.R. secs. 541.1 et seq. Rodríguez v. Concreto Mixto, Inc., 98 D.P.R. 579 (1970).
*1126 Por otra parte, a los fines del reglamento federal que define cuándo un empleado se considerará un ejecutivo, la frase "como costumbre y regularmente ejercite poderes discrecionales" usada en 29 C.F.R. see. 541.107 significa una frecuencia que tiene que ser más que ocasional pero que, por supuesto, puede ser menos que constantemente. Rodríguez v. Concreto Mixto, Inc., supra.
Asimismo, en 29 C.F.R. sec. 541.103, se explica que cuando sea necesario determinar si el empleado realiza principalmente funciones administrativas o de gerencia, el tiempo que dedique a esta labor es una de las guías que puede utilizarse pero no la única. A continuación detallamos algunos elementos alternativos que pueden ser considerados en aquellos casos donde el empleado lleva a cabo funciones no exentas más del cincuenta por ciento (50%) del tiempo y se entiende que sigue estando dentro del grupo exento. Estos son: la importancia relativa de sus deberes administrativas vis-a-vis otro tipo de deberes, la frecuencia con que el empleado ejercita sus poderes discrecionales, la relativa ausencia de supervisión del trabajo que desempeñe y la relación entre el salario del empleado y el salario pagado a otros empleados por el trabajo no exento que realizó el supervisor. 29 C.F.R. sec. 541.103.
Sabida es la norma de que la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y en caso de duda se interpretará restrictivamente a favor del obrero y en contra del patrono. López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970).
La obligación de establecer que un empleado está exento de las disposiciones que conceden compensación extraordinaria por horas extras trabajadas y de derechos tales como salario mínimo, vacaciones y licencia por enfermedad recae sobre el patrono, y si alguna duda subsiste sobre este hecho, se entenderá que no cumplió con dicha obligación. Martin v. Cooper Elec. Supply Corp., 940 F.2d. 896 (3rd. Cir. 1991).
En el caso de los supervisores, éstos solamente podrán considerarse ejecutivos y/o administradores cuando cumplan con los requisitos que fija el Reglamento Núm. 13 para cualificar como ejecutivos y/o administradores. De otra forma constituyen empleados gerenciales que no están sujetos a exclusión alguna de la legislación laboral sobre salario mínimo, horas extras y período para tomar alimentos. Acevedo Colom, Alberto, Legislación Protectora del Trabajo Comentada, Ramallo Printing Bros. 5ta. ed. revisada, 1997.
Para determinar si un empleado es administrador y/o ejecutivo a la luz del Reglamento Núm. 13, Tercera Revisión, son dos las pruebas alternativas a seguir: la corta y la larga. La corta consiste en probar los incisos (a), (b) y (e) del Art. Ill para los administradores y los incisos (a), (b) y (f) del Art. IV para los ejecutivos. La larga consiste en probar los requisitos (a), (b), (c), (d) y (e) del Art. Ill (administrador) y los requisitos (a), (b), (c), (d), (e) y (f) del Art. IV (ejecutivo). Lo determinante para la procedencia de una u otra, es el salario devengado por el empleado. Para aplicar la prueba corta el Reglamento Núm. 13, Tercera Revisión, requería un salario no menor de doscientos ($200) dólares semanales. De tratarse de un salario semanal menor estaríamos obligados a aplicar la prueba larga. Incluso, de tratarse de un salario semanal inferior a ciento treinta y cuatro ($134) dólares estaríamos ante un caso de un empleado no exento automáticamente e impedidos de realizar cualquiera de las pruebas antes señaladas. Véase Acevedo Colom, supra, a las págs. 74 y 76; Delgado Zayas, Ruy N., Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, 1989, págs. 31 a la 38.
Apliquemos el derecho a los hechos del caso de marras. El Tribunal de Primera Instancia concluyó que todos los querellantes devengaban un salario promedio de dos mil dólares ($2,000) mensuales que divididos entre cuatro semanas por mes dan un total de unos quinientos dólares ($500) semanales. Sentencia del 27 de agosto de 1996, a la pág. 9. Así se desprende igualmente tanto de la demanda original como de la demanda enmendada donde los apelantes solicitan que se les compense a razón de un salario mensual ascendente a dos mil cuatrocientos ochenta dólares ($2,480). Es forzoso, por tanto, que apliquemos la prueba corta a la controversia ante nos.
El primer requisito de la prueba corta, el salario semanal superior a doscientos ($200) dólares, ya fue discutido. Debemos, por tanto, pasar al análisis del segundo y tercer requisito de la prueba corta que en el caso de los administradores bajo el Art. Ill son: (a) que desempeñe trabajos de oficina o *1127 trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y (b)-que usual y regularmente ejerza discreción y juicio independiente.
La presente reclamación incluye tanto supervisores de casino así como a personal administrativo de otros departamentos del hotel. Entre los querellantes se encuentran varios empleados de la División de Contabilidad que fueron relocalizados en el casino a realizar tareas de los unionados en huelga con el fin de mantener el mismo operando. De la exposición estipulada entre las partes de la prueba narrativa se desprende que estos empleados, anterior a la huelga, realizaban labores administrativas enmarcadas dentro de los requisitos contemplados por el Reglamento Núm. 13 para ser considerados como empleados exentos, hecho que no está en controversia. Una vez comenzada la huelga pasaron a desempeñar funciones claramente relacionadas con la administración del casino tales como "Money Counters" y "Head Money Counters". Este empleo consiste en contabilizar todo el dinero que está circulando por el casino en adición a las ganancias y pérdidas de éste. Por lo antes expuesto concluimos que este grupo de los querellantes continuó realizando labores administrativas aún-durante, el término de duración de la hueíga.
En el caso de la clasificación de ejecutivos se cumple igualmente con el requisito del salario y faltarían por considerar dos requisitos: (a) que tenga por deber primordial la dirección de la empresa en que trabaja o de un usualmente reconocido departamento o subdivisión de la empresa; y (b) que usual y regularmente dirija el trabajo de dos o más empleados de la empresa o departamento o subdivisión de la misma.
Pasemos ahora al grupo de supervisores del casino que durante- la huelga realizaron labores de "croupiers". Este grupo de empleados a cargo del casino expresó que durante la huelga fungieron como "croupiers" en lapsos de una hora con descanso de veinte minutos entre éstos. Tampoco está en controversia el hecho de que todos estos empleados fueron supervisores antes y después de la huelga y que como tales estaban exentos de los beneficios de las leyes laborales que invocan. Aún cuando realizaron labores del personal unionado por causa de la huelga, entendemos que continuaron ejerciendo labores íntimamente relacionadas con la dirección y administración de una división del hotel como administrar el dinero y hacerse cargo de todas las operaciones del casino, y además que, por causas ajenas a su voluntad, los empleados a quienes debían supervisar estaban en huelga.
Como método de análisis paralelo al antes seguido pasemos ahora a aplicar el método establecido en 29 C.F.R. see. 541.103, para determinar si el empleado realiza principalmente funciones administrativas o de gerencia. Como mencionamos anteriormente el tiempo que dedique a esta labor es una de las guías que puede utilizarse, pero no constituye la vía exclusiva. Otros elementos alternativos para casos donde el empleado lleva a cabo funciones no exentas más del cincuenta por ciento (50%) del tiempo y se entiende que sigue estando dentro del grupo exento son: (1) la importancia relativa de sus deberes administrativas vis-a-vis otro tipo de deberes, (2) la frecuencia con que el empleado ejercita sus poderes discrecionales, (3) la relativa ausencia de supervisión del trabajo que desempeñe y (4) la relación entre el salario del empleado y el salario pagado a otros empleados por el trabajo no exento que realizó el supervisor.
El Tribunal de Primera Instancia utilizó esta sección de la ley federal para concluir que los querellantes continuaron ejerciendo labores exentas de los beneficios de las leyes bajo las cuales reclaman indemnización. Veamos. La importancia de las funciones de estos supervisores se reduce básicamente a asegurar todo lo relacionado con el funcionamiento del casino, desde el personal hasta lo económico, así como a garantizar que las apuestas y transacciones sean acordes a la ley. En éstos recae la total responsabilidad de las operaciones del casino mientras los "croupiers" se encargan de las jugadas como tal. El tribunal a quo concluyó, de la prueba que desfiló ante éste, que los querellantes ejercían poderes discrecionales constantemente que incluian diseñar itinerarios de trabajo y de mover subordinados dentro del área de supervisión.
Sobre la ausencia de supervisión del trabajo desempeñado cabe señalar que los querellantes pasaron a ocupar los puestos de "croupiers" pero aún así solamente debían reportarse al supervisor general y al director del casino quienes continuaron ocupando la misma posición durante la huelga y *1128 quienes siempre fueron sus superiores. Finalmente, el salario, criterio principal de todos los anteriores, tiende a indicar cuál es la importancia que tiene para el patrono el empleado en cuestión. A mayor sea la diferencia entre los empleados, con mayor probabilidad nos encontremos ante un empleado exento. Los querellantes, como surge del expediente ante nos, nunca perdieron los privilegios a los que tenían derecho por razón de su posición tales como poder abandonar el casino en las horas de descanso y el uso de las facilidades del hotel libre de costos, entre otros. De igual manera podemos concluir que los salarios devengados por los querellantes junto con los beneficios marginales, exclusivos para este grupo, a que hemos hecho referencia nos convencen de que éstos eran empleados adscritos a la gerencia del hotel en carácter de administradores y/o ejecutivos y por esta razón no acreedores de los beneficios solicitados.
Adoptar favorablemente la reclamación de los querellantes conllevaría que este Tribunal hiciera unas determinaciones de política pública contrarias a las establecidas en el Reglamento Núm. 13 de la Junta de Salario Mínimo. Es en los empleados ejecutivos, administrativos y gerenciales en quienes el patrono descarga la responsabilidad de asegurar el funcionamiento de su establecimiento cuando surgen situaciones especiales como la del caso de autos. No le asiste la razón a la parte apelante.
III
Sobre si una huelga crea o no un estado de emergencia que pueda dar lugar a que el patrono no cumpla con la legislación laboral vigente no habremos de pronunciarnos por dos razones: en primer lugar, ya hemos expresado que en el caso de autos no le asiste la razón a la parte apelante en cuanto a declarar a los querellantes como empleados no exentos. En estricta juridicidad nos abstenemos de pronunciarnos sobre este particular.
En segundo lugar, los foros apelativos no intervendrán con la apreciación de la prueba en ausencia de prejuicio, parcialidad, pasión o error manifiesto, o a menos que un análisis integral de la prueba así lo requiera. Quiñones López v. Manzano Pozas, 141 DPR _, 96 J.T.S. 95.
El Tribunal de Primera Instancia determinó que la huelga decretada por el personal unionado creó una situación de emergencia dados los actos de violencia y el clima de tensión que imperó durante la duración de la misma. Ahora bien, debemos mencionar que carece de fundamento la alegación de la parte apelante a los efectos de que erró el tribunal apelado al concluir que por tratarse de una situación de emergencia los empleados no tuvieran derecho al pago de horas extras. Se desprende claramente de la sentencia apelada que el tribunal a quo utilizó como base para su análisis y sentencia, sobre si los querellantes eran o no empleados exentos, el texto del Reglamento Núm. 13, así como la Ley Federal de Normas Razonables de Trabajo y no si bajo una huelga considerada como emergencia puede el patrono obviar cumplir con las leyes laborales.
ÍV
La Regla 13.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 13.2, regula lo relacionado a las enmiendas de las alegaciones por la prueba presentada durante el juicio en su fondo. Esta reza de la siguiente manera:

"Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán a todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda de las alegaciones que fuere necesaria para conformarlas a la evidencia a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse a moción de cualquiera de las partes en cualquier momento, aun después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objetare la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas y deberá hacerlo liberalmente, siempre que con ello se facilite la presentación del caso y la parte que se oponga no demuestre a satisfacción del tribunal que la admisión de tal prueba perjudicaría su reclamación o defensa. El tribunal podrá conceder una suspensión para permitir a la parte opositora controvertir dicha prueba.

En todo caso en que hubiere alguna parte en rebeldía por falta de comparecencia se estará a lo dispuesto en las Reglas 43.6 y 67.1."

*1129 El Tribunal Supremo ha expresado que la letra de las reglas que conceden discreción a los tribunales para autorizar enmiendas a las alegaciones, son preceptos que deben ser interpretados liberalmente. Neca Mort. Corp. v. A & W. Dev. S. E., 137 D.P.R. _ , 95 J.T.S. 10. Sin embargo, las enmiendas en el juicio a una demanda están condicionadas a la consideración del momento en que se ■ soliciten, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente y el perjuicio que la misma causaría a la otra parte. Epifanio Vidal, Inc., v. Suro, 103 D.P.R. 793 (1975). Por otra parte, para que la demanda se entienda enmendada por prueba presentada en el juicio, es necesario: (1) que la parte que interese la enmienda, la presente en el juicio, y; (2) que no exista objeción a dicha presentación, o que, aun cuando exista objeción, el tribunal la admita. Véase, José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, Vol. II Cap. III, pág. 78, Publicaciones J.T.S., (1984).
En el caso de marras la querella fue presentada en 1991. En 1995 la parte querellante intentó enmendar las alegaciones de la querella para establecer que los empleados habían perdido su carácter de ejecutivos y/o administradores no tan sólo durante la huelga si no antes de que ésta comenzara. El Tribunal de Primera Instancia resolvió mediante resolución de 30 de agosto de 1995 que no procedía la misma por tardía, entre otros fundamentos. Luego, en la vista en su fondo la misma parte intentó enmendar las alegaciones por la prueba que desfilaba a lo que la representación legal del patrono objetó oportunamente. El tribunal apelado declaró la objeción con lugar y no permitió la enmienda en el juicio por considerarla extremadamente tardía, perjudicial al querellado y por haber sido objetada oportunamente la misma. Actuó correctamente el Tribunal de Primera Instancia al denegar la enmienda a las alegaciones de la querella.
V
Por los fundamentos antes expresados procede confirmar la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General