# 2003 DTA 88

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE CAROLINA-FAJARDO

JOSE B. CASTILLO ROJAS
Apelante

v.

CLUB YAUCANO, INC.
Apelado

Núm. KLAN-02-00416

San Juan, Puerto Rico, a 15 de mayo de 2003

Panel integrado por su Presidente, el Juez Miranda De Hostos, la Juez Hernández Torres y el Juez Martínez Torres

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante José B. Castillo Rojas (en adelante Castillo), acude ante nos de una sentencia parcial final del Tribunal de Primera Instancia, Sala Superior de Carolina, que desestimó la reclamación de salario mínimo, horas extras, vacaciones, bono de navidad, licencia por enfermedad y mesada correspondiente, que éste presentara en contra de la parte apelada Club Yaucano, Inc. (en adelante Club Yaucano).

Alega, en síntesis, que erró el tribunal de instancia al apreciar la prueba presentada, determinando que se desempeñó como *"administrador"* al amparo del Reglamento Núm. 13 de la Junta de Salario Mínimo, desde el 1 de julio de 1994 al 1 de junio de 1997 y desestimando su reclamación en cuanto a dicho período.

Se confirma la sentencia apelada por los siguientes fundamentos.

### I

La parte apelante, Castillo, presentó demanda sobre reclamación de salario mínimo, horas extras, vacaciones, bono de navidad, licencia por enfermedad y mesada en contra de la parte apelada Club Yaucano, el 9 de noviembre de 1998. (Ap. 1a, págs. 15-17.)

Castillo alegó que en el mes de enero de 1989, fue contratado mediante contrato verbal por Club Yaucano y ocupó la posición de ayudante de cocina, luego mozo y finalmente el 1 de julio de 1994, firmó un contrato para ocupar la posición de asistente de administrador, la cual ocupó hasta septiembre de 1997, cuando alegadamente fue despedido sin justa causa y sin que se le pagaran los beneficios de la Ley Núm. 80. Que durante todo el tiempo que trabajó para Club Yaucano realizó tareas en horas extras sin ser compensado a tipo doble, que no le fueron pagados los días que se ausentó por enfermedad ni se le pagaron sus vacaciones regulares acumuladas. (Ap. 1a, págs. 15-17.)

Luego de varios trámites procesales y de que concluyera el procedimiento de descubrimiento de prueba, Club Yaucano presentó una moción de sentencia sumaria parcial el 6 de marzo de 2001. En la misma alegó, en

síntesis, que debido a que Castillo había firmado un contrato de servicios profesionales para ocupar la posición de sub-administrador el 1 de julio de 1994 y se había desempeñado como tal hasta el 1 de junio de 1997, éste era un "*administrador*" al amparo del Reglamento Núm. 13 de la Junta de Salario Mínimo, por lo cual estaba excluido de las disposiciones sobre salario mínimo, horas extras y período de alimentos durante dicho período. (Ap. 14, págs. 47-154.)

Castillo presentó su oposición a la moción de sentencia sumaria parcial el 20 de abril de 2001, en la cual alegó que si bien era cierto que el 1 de julio de 1994, había firmado el contrato de servicios profesionales de sub-administrador, realmente había continuado ejerciendo el 80% de las horas trabajadas en la semana, trabajo manual como mantenimiento, limpieza, cocinero, ayudante de cocinero, mozo, trabajos de pintura, jardinería, mensajería, plomería y electricidad. (Ap. 16, págs. 157-163.)

El tribunal de instancia celebró vista evidenciaria los días 16 y 24 de octubre y el 24 de enero de 2002. La parte apelada, Club Yaucano, presentó los testimonios de Rubén Díaz Berríos, Roberto Medero Ramírez, Rosemary Oliveras Marín y Angel Luis Cintrón.

El señor Rubén Díaz Berríos, empleado de mantenimiento, declaró que después de que la parte apelante, Castillo, firmó el contrato de Sub-Administrador en 1994, no trabajó más como mozo, ni realizó labores de mantenimiento, sino que realizaba todas sus labores en la oficina principal del club. Entre las gestiones que realizaba la parte apelante, estaban las de atender al público y hacer compras. (E.E.P., págs. 1-2.)

El señor Roberto Medero Ramírez, empleado de mantenimiento, también declaró que Castillo realizaba su trabajo en la oficina y que no hacía trabajo de mantenimiento. (E.E.P., pág. 2.)

La señora Rosemary Oliveras, secretaria del club, declaró que después de haber sido contratado como sub-administrador, la parte apelante trabajó en un escritorio localizado en la misma oficina en la cual ésta se encontraba. Declaró que dentro de las funciones de la parte apelante estaban las de atender al público, preparar la lista de compras, recibir pagos, firmar los cheques y firmar contratos. Los cheques que emitía la parte apelante eran de una cuenta pequeña para gastos diarios que la parte apelada, Club Yaucano, tenía en el Banco Popular Sucursal de Campo Rico, pues también tenía otra cuenta mayor en la Sucursal de Cataño, a la cual la parte apelante no tenía acceso. (E.E.P., págs. 2-3.)

La señora Rosemary Oliveras también declaró que la parte apelante no realizaba gestiones de mantenimiento, de mozo o en la cocina, sino que trabajaba en un escritorio de la oficina administrativa. Además, que Castillo no participaba en el proceso de toma de decisiones importantes con relación al funcionamiento o administración del club. (E.E.P., pág. 4.)

Por último, declaró el señor Angel Cintrón, Presidente del Club Yaucano al momento de su declaración; sin embargo, al momento de los hechos alegados en la demanda, era sólo socio del club. Su declaración fue sólo a los efectos de que cuanto fue nombrado Presidente en 1997, ordenó que se realizara una revisión de los cargos realizados a la tarjeta de crédito a nombre de Castillo y la misma evidenció que todos los cargos realizados fueron para gastos legítimos del club y que no contenía gastos de representación. (E.E.P., pág. 4.)

La parte apelada, Club Yaucano, presentó la siguiente prueba documental:

"*1. El contrato de servicios profesionales suscrito entre las partes el 1 de julio de 1994, en el que claramente se denomina a Castillo como el sub-administrador. (Ap. 20a, págs. 177-178.)*

*2. Apéndice del contrato de servicios profesionales donde se detallan las funciones y responsabilidades del puesto de sub-administrador. (Ap. 20b, págs. 179-181.)*

*3. Copia de 122 cheques del Club Yaucano, firmados por la parte apelante, Castillo. (Ap. 20c, págs. 182-216.)*

*4. Recibos del Club Yaucano firmados por Castillo. (Ap. 20d, págs. 217-229.)*

*5. Advertencias de Castillo a cuatro (4) empleados. (Ap. 20e, págs. 230-233a.)*

*6. Contratos de 4 de mayo de 1992 y 15 de diciembre de 1996, otorgados por Castillo para actividades en el Club Yaucano. (Ap. 20f y 20g, págs. 234-244.)*

*7. Informes de ingresos y desembolsos del Club Yaucano sobre diferentes actividades, realizados por Castillo. (Ap. 20h, págs. 245-249.)*

*8. Varias cartas suscritas por Castillo y el administrador Luis O. Franceschini, sobre accidentes ocurridos a varias personas en el club y las acciones tomadas. (Ap. 20i, págs. 250-255.)*

*9. Informe trimestral y recibos de la tarjeta de American Express de la parte apelada, Club Yaucano, a nombre de la parte apelante, Castillo. (Ap. 20j, págs. 256-265.)*

*10. Copia de cheques a nombre de la parte apelante, Castillo. (Ap. 20k, págs. 266-275.)*

*11. Reglamento del Club Yaucano aprobado el 3 de mayo de 1998. (Ap. 20l, págs. 275-306.)*

*12. Contrato de servicios profesionales suscrito por Club Yaucano y el administrador del club, Luis O. Francesschini. (Ap. 20m, págs. 307-315.)*

*13. Factura, contrato y hoja de servicio de actividad del cincuenta (50) aniversario del club suscritas por Castillo. (Ap. 20n, págs. 316-316.)*

*14. Carta de 1 de abril de 1996, de Luis O Franceschini dirigida a Castillo, donde le informa sobre un aumento de sueldo de $400.00, para un salario de $1,500.00 y el 1% del producto bruto por concepto de actividades particulares celebradas mensualmente. Además, tenía el beneficio marginal de una aportación de $218.00 al plan médico familiar de Triple SSS. (Ap. 20o, pág. 318.)"*

El contrato de servicios profesionales contiene un apéndice en el cual se detallan las funciones y responsabilidades del puesto, las que citamos a continuación:

"...

*II. Funciones y Responsabilidades del Puesto:*

*A. Personal*

*1. Será responsable de seleccionar y nombrar el personal de su equipo de trabajo en el área de servicios, previa autorización del Administrador, que incluye: mozos, concineras, ayudantes de cocina, mantenimiento y guardias de seguridad.*

*2. Será responsable de asignar las tareas de trabajo a cada uno de ellos.*

*3. Será responsable de establecer los horarios y días de trabajo del personal que presta servicios: a saber:*

*cocineras, ayudantes de cocina y guardias de seguridad, los cuales estarán a tono con las actividades a celebrarse, ya sean éstas para los socios y/o actividades particulares.*

*4. Será responsable de establecer los horarios de trabajo, días libres y vacaciones a los empleados de mantenimiento.*

*5. Se asegurará mediante el proceso de supervisión que el personal de mantenimiento observe lo establecido en el documento "Tareas Empleados de Mantenimiento".*

*6. Establecerá y desarrollará un plan de supervisión y adiestramiento para todo el personal a los fines de lograr la mejor eficiencia en la prestación de los servicios ofrecidos por el Club en todas las áreas de trabajo.*

*7. Preparará evaluación anual de trabajo del personal regular y de servicios y someterá sus recomendaciones al Administrador.*

*8. Establecerá, llevará y mantendrá al día todo tipo de récord que sea necesario para identificación del personal.*

*9. Tendrá autoridad para recomendar la sustitución suspensión y despido de los empleados, previa consulta y autorización del Administrador.*

*10. Mantendrá al Administrador informado sobre todo asunto concerniente al personal, que estime deba tener conocimiento, y/o para solicitar intervención en la situación.*

*B. Propiedad y Equipo*

*1. Será el responsable y el custodio de toda la propiedad mueble del Club, de su equipo (oficina, cocina, barra) y mobiliario.*

*2. Establecerá, previa autorización del Administrador, aquellas medidas que garanticen (sic) la seguridad de la propiedad de la Casa Club, documentos, equipo, área de piscina, sus alrededores y áreas adyacentes.*

*3. Informará al Administrador y a las autoridades pertinentes a la brevedad posible sobre cualquier eventualidad que pueda o haya violentado la seguridad de personas o de la propiedad.*

*4. Mantendrá un inventario debidamente identificado, sobre todo el equipo y mobiliario del Club.*

*5. Será responsable de la custodia y mantenimiento de todo vehículo, maquinaria que por compra o alquiler haya adquirido el Club.*

*6. Reglamentará el uso de los vehículos y maquinarias y fijará responsabilidades en aquéllos (sic) a quienes se le permita su operación, que deberá ser siempre para asuntos oficiales.*

*7. Someterá al Administrador las recomendaciones pertinentes en cuanto a compras, reparaciones, alteraciones y reposiciones del equipo de la Casa Club.*

*C. Cantina y Cocina:*

*El Sub Administrador, en estrecha coordinación con el Administrador:*

*1. Será responsable de efectuar las compras necesarias de comestibles, bebidas, refrescos, platos, vasos, cubiertos, servilletas, artículos de limpieza, de uso personal, mantenimiento y otros.*

*2. Deberá asesorarse y orientarse en el mercado, a los fines de conseguir beneficios de las ofertas más convenientes a los intereses del Club y su poder adquisitivo.*

*3. Procurará tener siempre provisión adecuada de todos aquellos artículos comestibles y bebidas necesarias de mayor demanda de los consumidores. Será responsable de supervisar el uso que se les dá (sic) y las existencias en la cocina, cantina y almacén. Proveerá y establecerá los controles administrativos que permitan el establecimiento del sistema de inventario perpetuo y la determinación de costos y beneficios.*

*4. Se asegurará mediante el método de supervisión que el personal de cocina observe lo establecido en el "Manual de Normas y Responsabilidades en los Servicios de la Unidad de Cocina".*

*D. Actividades:*

*1. Socios*

*a. Orientará a todo el personal a mantener un alto sentido de responsabilidad en el trato con los socios basado en el buen tacto, fina discreción y ofreciendo todas aquellas deferencias a que son acreedores los sostenedores de nuestra Organización.*

*b. En caso de surgir diferencias, discrepancias con algún socio, éste mantendrá su posición como empleado y notificará al Administrador para que éste, a su mejor juicio, previo evaluación de la situación, intervenga personalmente o lo someta a la Presidencia de la Junta de Directores para la acción que estime pertinente.*

*2. Particulares*

*a. Será responsable de que las actividades contratadas se realicen de acuerdo a lo especificado en el contrato y las instrucciones del Administrador.*

*b. Será su responsabilidad de que observen las Normas establecidas en dos documentos titulados "Labores a realizarse por el equipo de Trabajo en Actividades Clasificadas".*

*c. Establecerá, fomentará y mantendrá buenas relaciones y de acción cooperativa con las personas particulares que utilicen nuestras facilidades.*

*d. Redactará y preparará todos aquellos informes relacionados con su trabajo y equipo de trabajo que sean necesario o se le requieran.*

*e. Estudiará, analizará y resolverá los problemas de operación que surgen o que le son delegados para mantener la mayor eficiencia y el mejor rendimiento conforme a los objetivos establecidos y las prioridades que surgen.*

*f. Colaborará estrechamente con el Administrador y la Secretaria de Administración para proveerle todos los documentos necesarios para la preparación de informes semanales, mensuales, trimestrales y anuales sobre la situación financiera del Club.*

*g. Realizará las otras tantas tareas afines como le sean asignadas.*

...".

(Ap. 20b, págs. 179-181.)

La parte apelante, Castillo, solamente presentó su testimonio. Este declaró que aun cuando firmó contrato el 1 de julio de 1994, para el puesto de sub-administrador, siguió realizando las mismas funciones que realizaba antes de firmar el contrato trabajando en la cocina, de mozo, en mantenimiento, haciendo compras, plomería y electricidad. Que le daba instrucciones a los empleados de mantenimiento según le indicaba por escrito el Administrador y que no tenía autoridad para contratar o despedir empleados, ni autorizaba vacaciones, horas extras o ausencias. (E.E.P., pág. 5.) (T.E., págs. 8-14, 28-30, 50, 56-60.)

Por otro lado, declaró que firmaba cheques a nombre de la parte apelada, Club Yaucano, recibía los pagos por concepto de las actividades celebradas en el club y realizaba los informes de ingresos y desembolsos de las actividades celebradas. Que tenía una tarjeta de American Express de la parte apelada, Club Yaucano, a su nombre, con la cual le compraba gasolina a la guagua del Club Yaucano y comestibles para las actividades que se celebraban en el club. Que suscribió dos (2) contratos a nombre del Club Yaucano para actividades privadas y suscribía comunicaciones a personas o entidades a nombre de la parte apelada, Club Yaucano. (E.E.P., pág. 5; Objeciones a la E.E.P., págs. 1-2.) (T.E., págs. 35-37. 44-46, 50-51, 77-79, 85-88, 101-102.)

En cuanto a la supervisión de los empleados durante actividades realizadas en el Club Yaucano, la parte apelante, Castillo, declaró que le brindaba instrucciones a los mozos sobre sus responsabilidades y deberes. Además, tenía autoridad para amonestar y sancionar a los empleados, como en efecto lo hizo en cuatro (4) ocasiones, y suscribía en representación de la parte apelada, los informes sobre accidentes ocurridos para el Fondo del Seguro del Estado. En cuanto a los socios del club, la parte apelada declaró que podía iniciar procedimientos disciplinarios en su contra y suscribía también los informes de accidentes ocurridos (Objeciones a la E.E.P., págs. 1-2.) (T.E., págs. 60-64, 78-85, 89-101.)

Como prueba documental, el apelante presentó lo siguiente:

"1. Copia de varios recibos del Club Yaucano. (Ap. 23a, pág. 340.)

2. Contrato de servicios profesionales de la actividad celebrada el 9 y 16 de mayo de 1997. (Ap. 22b, pág. 341.)"

Así las cosas, el tribunal de instancia emitió sentencia parcial el 27 de marzo de 2002, determinando que desde el 1 de julio de 1994, cuando la parte apelante, Castillo, firmó el contrato de servicios profesionales como sub-administrador, hasta el 1 de junio de 1997, cuando cesó de trabajar para la parte apelada, Club Yaucano, sus funciones habían sido las de un "administrador" al amparo del Reglamento Núm. 13 de la Junta de Salario Mínimo. Por lo tanto, desestimó las reclamaciones instadas por concepto de salarios, horas extras, vacaciones y licencias por enfermedad correspondientes a dicho período en el cual la parte apelante se desempeñó como administrador.

El tribunal de instancia determinó lo siguiente:

"...

12. El demandante invertía la totalidad de su tiempo laborable desde el 1ero. de julio de 1994 hasta el 1ero. de junio de 1997 realizando labores propias del puesto de Sub-Administrador. Entre estas funciones estaban las siguientes:

*A. El demandante emitía y firmaba cheques a nombre de la demandada y como parte de las labores de administración de esta (sic).*

*B. El demandante suscribía comunicaciones a entidades ajenas a la demandada, a nombre de esta (sic) última.*

*C. El demandante tenía una tarjeta de crédito a su nombre expedida por la demandada, con la cual podía incurrir en gastos de representación que finalmente eran sufragados por la demandada.*

*D. El demandante realizaba compras para la demandada.*

*E. El demandante supervisaba empleados y les asignaba tareas a estos (sic).*

*F. El demandante tenía autoridad para amonestar y sancionar empleados.*

*G. El demandante le brindaba instrucciones a los mozos sobre sus responsabilidades, deberes y obligaciones.*

*H. El demandante podía iniciar procedimientos disciplinarios contra socios del Club Yaucano.*

*I. El demandante suscribía informes de ingresos y desembolsos de las diferentes actividades que se celebraban en el Club Yaucano.*

*J. El demandante suscribía, en representación de la demandada, informes de accidentes de empleados de ésta que se sometían al Fondo del Seguro del Estado.*

*K. El demandante recibía pagos por concepto de liquidación de actividades celebradas en el Club Yaucano y a esos efectos suscribía los recibos que acreditaban el pago de la actividad.*

*...".*

(Ap. 1, pág. 10.)

Inconforme con la determinación del tribunal de instancia, la parte apelante acude ante nos.

## II
Procedemos a exponer la norma jurídica aplicable

## A
**El término administrador bajo el Reglamento Núm. 13 de la Junta de Salario Mínimo**

El Reglamento Núm. 13 de la Junta de Salario Mínimo, en su Artículo III, define el término administrador de la siguiente forma:

*"...*

*Cualquier empleado que reúna los siguientes requisitos:*

*(a) que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las*

*operaciones generales del negocio del patrono o de los clientes del patrono; y*

*(b) que usual y regularmente ejerza discreción y juicio independiente; y*

*(c) 1- que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos término se definen en el presente reglamento; o*

*2- que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o*

*3- que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y*

*(d) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no se dedique hasta el 40%, de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en los Incisos (a), (b) y (c) de este Artículo III; y*

*(e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.*

*(f) también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios."* (Enfasis suplido.)

Para que un empleado sea considerado como *"administrador"* bajo la disposición antes citada, debe cumplir con todos los requisitos enumerados. *Rolón v. Charlie Car Rental, Inc.*, 148 D.P.R. 420, 428 (1999); *Almodóvar v. Margo Farms del Caribe, Inc.*, 148 D.P.R. 103, 112 (1999).

Nuestro más alto foro ha determinado que un empleado es *"administrador"* cuando realiza las siguientes funciones:

"...

*(1) Supervisaba y dirigía las labores del empleado* permanente, a tiempo completo que había, y de aquellos otros que por tiempo parcial ocasionalmente contrataba y despedía.

*(2) Atendía los clientes, suministraba información* y concedía o denegaba crédito por servicios funerales.

*(3) Recibía pagos por servicios a clientes y gestionaba el cobro de los mismos.*

*(4) Supervisaba y dirigía los servicios* funerarios, coordinando con los cementerios, iglesias, etc. (sic) todo lo relativo a tales servicios.

*(5) Disponía del mantenimiento y la compra de materiales necesarios para las facilidades físicas* de la funeraria y de los ataúdes.

*(6) Estaba autorizado a girar cheques contra la cuenta de la querellada* en Aibonito, en unión a otra persona.

*(7) **Tenía disponible y utilizaba discrecionalmente** un fondo de $100.00 en efectivo para asuntos misceláneos, (petty cash) [en el caso de autos una tarjeta de crédito American Express]*

*(8) **No tenía horario fijo** ni persona que lo supervisara, pudiendo disponer de su tiempo conforme su mejor criterio. (Énfasis suplido.)*

*...".*

*Lehman v. Ehret, Inc.,* 103 D.P.R. 264, 268-269 (1975).

## B
## Revisión judicial

Es norma jurisprudencial reiteradamente establecida, aquella que postula que en el ámbito apelativo no se intervendrá con las determinaciones de hechos y la adjudicación de credibilidad efectuada por el juzgador de los hechos, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Rodríguez Báez v. Nationwide Insurance Company,* opinión de 18 de abril de 2002, **2002 J.T.S. 61**, pág. 1013; *Trinidad García v. Chade, supra,* pág. 793.

El Tribunal de Primera Instancia es el que tiene la oportunidad de oír y ver declarar a los testigos y apreciar su comportamiento, por lo que está en mejor posición de aquilatar la prueba testifical presentada. Cuando existe conflicto de prueba, le corresponde al juzgador de los hechos dirimirlo. *Flores v. Soc. de Gananciales,* 146 D.P.R. 45, 49-50 (1998); *Pueblo v. Rivera Robles,* 121 D.P.R. 858, 869 (1988).

Sin embargo, la norma de que un tribunal apelativo no debe alterar las determinaciones de hechos del tribunal sentenciador, no aplica cuando la evidencia consiste de deposiciones, estipulaciones escritas u orales, o por hechos incontrovertidos por las alegaciones o la prueba. Cuando estamos ante prueba documental, los tribunales de apelación o revisión estamos en igual posición que la sala sentenciadora para hacer nuestras propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función revisora. *Ortiz Malavé v. Meaux,* opinión de 4 de abril de 2002, **2002 J.T.S. 47**, pág. 929; *Moreda Toledo v. Maruxa Rosselli,* opinión de 3 de marzo de 2000, **2000 J.T.S. 69**, pág. 950.

## III
Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.

El acápite (f) del Artículo III del Reglamento Núm. 13 de la Junta de Salario Mínimo, dispone que el término *"administrador"* significa cualquier empleado que reciba una compensación fija equivalente a un salario semanal no menor de $295.00, que realice trabajos que no sean de naturaleza manual relacionados con las normas generales de operación de la empresa y que ejerza discreción y juicio independiente en sus funciones. Por lo tanto, procedemos a analizar cada uno de los requisitos enumerados, para determinar si la parte apelante, Castillo, era un *"administrador"*, de acuerdo a la prueba presentada.

## A
## Compensación no menor de $295.00 semanales por el trabajo realizado

Quedó establecido que la parte apelante, Castillo, recibía un pago mensual de $1,500.00, por lo cual resulta evidente que su compensación era mayor de $295.00 semanales. Aún más, recibía el 1% del producto bruto por concepto de actividades particulares celebradas mensualmente en el Club Yaucano. Por lo tanto, cumple con el requisito de recibir una compensación no menor de $295.00 semanales.

## B
**Trabajos que no sean de naturaleza manual**

De la prueba presentada, surge claramente que todas las labores realizadas por la parte apelante, Castillo, desde el año 1994, cuanto firmó el contrato como sub-administrador hasta que alegadamente fue despedido, no eran de naturaleza manual, sino todo lo contrario. La prueba demostró que éste, aunque bajo las instrucciones que le brindaba el Administrador, le daba las instrucciones a los empleados, firmaba cheques, recibía pagos por concepto de actividades y otorgó contratos para la celebración de actividades, entre otros. Por lo tanto, quedó establecido que los trabajos realizados por la parte apelante no eran de naturaleza manual exclusivamente.

## C
**Discreción y juicio independiente ejercido en el trabajo**

En cuanto a la prueba presentada sobre la discreción y juicio independiente ejercido por la parte apelante, Castillo, en el desempeño de su trabajo, éste tenía la discreción y capacidad para sancionar y amonestar a los empleados, así como de iniciar procedimientos disciplinarios en contra de socios del club. Además, la parte apelante tenía una tarjeta de crédito del Club Yaucano a su nombre, firmaba cheques y suscribía contratos a nombre de la parte apelada, Club Yaucano. Por lo tanto, de acuerdo a la prueba presentada quedó establecido que la parte apelante también ejercía juicio independiente y discreción en el desempeño de sus funciones.

Concluimos que el tribunal de instancia actuó correctamente, pues tuvo prueba suficiente para determinar que la parte apelante era *"administrador"* desde el 1 de julio de 1994 al 1 de junio de 1997, conforme a lo establecido por el Reglamento Núm. 13 de la Junta de Salario Mínimo y desestimar las reclamaciones de salarios, horas extras, vacaciones y licencias por enfermedad correspondientes a dicho período.

## IV
Por los fundamentos antes expuestos, se confirma la sentencia apelada, según sus términos y condiciones.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General