RAFAEL LÓPEZ VEGA, demandante y recurrido, *v.* FRANCISCO VEGA OTERO, INC., demandada y recurrente.

*Número:* R-68-271     *Resuelto:* 30 de diciembre de 1974

*John F. Malley,* abogado de la recurrente; *Jesús Hernández Sánchez,* abogado del recurrido.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

En *Rodríguez* v. *Concreto Mixto, Inc.,* 98 D.P.R. 579 (1970), reafirmamos nuestra doctrina jurisprudencial laboral de que la determinación de si una persona que presta servicios en una empresa operando en el comercio interestatal[1] es un ejecutivo, implica el examen de los factores relevantes—naturaleza y funciones del empleo—y la concurrencia de todos los requisitos[2] enunciados y adoptados en el regla-

---

[1] Es incontrovertible que la entidad recurrente es una empresa que opera en el comercio interestatal estando, por tanto, reglamentada por la Ley de Normas Razonables del Trabajo Federal (29 U.S.C.A. sec. 201 *et seq.*). La protección de esta ley no extiende los beneficios provistos por sus Secs. 206 y 207 en cuanto a salario mínimo y horas máximas a las personas empleadas en una capacidad *bona fide* de "ejecutivos", "profesionales" y "administradores". *Matos Velázquez* v. *Proctor Manufacturing Corp.,* 91 D.P.R. 45, 54–55 (1964).

[2] En síntesis, los requisitos exigidos por el Reglamento Federal para que una persona sea considerada como ejecutivo son:

(a) Que su deber primordial consista en la dirección de la empresa en que trabaja o en la dirección de un habitualmente reconocido departamento o subdivisión de la empresa;

mento de la Ley Federal de Normas Razonables del Trabajo (29 Code of Federal Regulations, sec. 541 *et seq.*). La exclusión de los beneficios de la legislación de carácter laboral debe ser manifiesta y requiere una interpretación restrictiva. *Calderón* v. *Esso Standard Oil Co.*, 92 D.P.R. 129 (1965).

Debido a la similitud que existe entre la reglamentación federal y la nuestra, igual enfoque ha prevalecido respecto a la aplicación del Reglamento Núm. 13 promulgado por el Secretario del Trabajo de Puerto Rico definiendo los términos "ejecutivo", "administrador" y "profesional" excluidos del término "empleado" por el Art. 19 de la Ley Núm. 379 (29 L.P.R.A. sec. 288). *López Santos* v. *Tribunal Superior*, 99 D.P.R. 325, 328 (1970); *Marcano Rodríguez* v. *Pepsi Cola Bot. Co.*, 95 D.P.R. 445, 448 (1967); *Morales* v. *Tribunal Superior*, 84 D.P.R. 123, 127 (1961); *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 D.P.R. 89, 93–95 (1961).

En la querella sobre salarios objeto del presente recurso, el tribunal de instancia condenó a la recurrente Francisco Vega Otero, Inc., a satisfacer al recurrido Rafael López Vega

---

(b) Que habitual o regularmente dirija el trabajo de dos o más empleados de la empresa, departamento o subdivisión;

(c) Que tenga la autoridad de emplear y despedir otros empleados o cuyas recomendaciones sobre el empleo, despido, mejoramiento, ascenso y cualquier otro cambio de status de otros empleados hayan de recibir especial atención;

(d) Que habitual y regularmente ejerza facultades discrecionales;

(e) Que no dedique más del 20% de las horas trabajadas a actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo descrito en los incisos anteriores; disponiéndose que este inciso no será aplicable en el caso de un empleado que esté él solo a cargo de un establecimiento físicamente separado del mismo, o que sea dueño de por lo menos el 20% del interés de la empresa en que esté empleado; y

(f) Que reciba por sus servicios una compensación fija equivalente a un sueldo semanal no menor de $80.00 (o de $55.00 a la semana si está empleado en Puerto Rico o en las Islas Vírgenes) excluyendo alimentos, vivienda u otros servicios. Disponiéndose que cualifica como ejecutivo, cualquier empleado cuyo trabajo cumpla con los primeros dos incisos y que reciba por sus servicios una compensación equivalente a un salario semanal no menor de $125.00, excluyendo alimentos, vivienda u otros servicios.

la suma total de $25,183.00 en concepto de horas trabajadas, doble penalidad y honorarios de abogado.

En vista de que la controversia ante nos gira exclusivamente[3] en torno a si el querellante ejercía habitualmente su discreción en el desempeño de sus labores, y si estaba facultado a emplear o despedir personal, limitaremos nuestro análisis a ambas cuestiones.

Las determinaciones factuales pertinentes que dieron margen al dictamen de que el querellante no era ejecutivo, son las siguientes:

"2. Para facilitar la operación de este negocio la querellada tenía tres oficinas, una en San Juan, otra en Caguas y la tercera en Humacao. La oficina de San Juan era atendida por el Sr. Robert S. Hughes quien desempeñaba el cargo de Gerente General y Vice-presidente. La oficina principal ubicaba en Caguas y era atendida por el Sr. Pedro Jaime Christian c/p Mapé. La oficina de Humacao se estableció allá para el año 1955 y se utilizaba principalmente, según surge del conjunto de la prueba para atender la transportación de caña de azúcar, mieles, azúcar, fertilizantes, etc. a la firma A. Roig Sucesores de Humacao y Central Roig Refining Co. de Yabucoa. Esta oficina era *atendida* por el *querellante* quien fue trasladado desde la oficina principal de Caguas luego de que el Sr. Catalino Carreras, anterior supervisor, renunciara. El personal de la oficina de Humacao consistía de un Superintendente de Transportación, una Secretaria, un capataz, un mensajero y quince o veinte conductores de camiones.

3. Según se ha expresado antes, el querellante era el encargado de la oficina de Humacao. Su labor consistía en comunicarse todas las mañanas por teléfono con el Sr. Pedro Jaime Christian de la oficina de Caguas para recibir instrucciones con respecto a la labor que habría de realizar durante el día. Luego de organizar el inicio de las labores diarias instruyendo a los obreros sobre las tareas a realizar el querellante iniciaba el trabajo de oficina que consistía en la preparación de informes diarios de carga y descarga; consignar el horario de trabajo de los distintos empleados y obreros y la preparación de hojas de despacho para

---

[3] De la sentencia como de la prueba testifical y documental, surge claramente la concurrencia de los restantes requisitos condensados en el escolio anterior.

cada conductor. Esta labor la realizaba el querellante el lunes, martes y miércoles de cada semana. El jueves de cada semana lo dedicaba a la preparación de las nóminas y depositando el importe del jornal semanal de cada empleado en el correspondiente sobre luego de recibir el cheque para el pago de los salarios de la oficina de Caguas y cambiarlo en billetes y moneda fraccionaria. Además, el querellante constataba la información que aparecía en la copia de la nómina que recibía de Caguas con aquella que retenía en su oficina de Humacao, es decir, constataba, con vista del informe diario que quedaba en la oficina de Humacao el cual consistía del récord de las horas diarias trabajadas por cada obrero. Entre las tareas que el querellante realizaba figuraba la labor clerical de oficina; la preparación de facturas de cobro; supervisión de las labores realizadas en el solar de estacionamiento de Humacao; transportación de conductores de camiones a la Central Roig de Yabucoa en un vehículo de motor manejado por un empleado de la querellada. Trasmitía instrucciones al capataz que como empleado de la querellada trabajaba en la Central Roig; atendía la llegada y salida de los camiones de arrastre con sus plataformas; se comunicaba periódicamente con ejecutivos de Central Roig Refining Co. y de A. Roig Sucesores para atender quejas y realizar para dichas firmas cualesquiera gestión relacionada con la transportación de carga no cubierta por un contrato de servicios que la querellada tenía concertado con las referidas firmas.

4.  .  .  .  .  .  .  .  .

5. Durante el día domingo de cada semana el demandante trabajaba en la preparación de informes conocidos como "bill of lading" lo cual le tomaba aproximadamente dos horas. Cada dos domingos, esto es, dos veces al mes, se lavaban los camiones y era responsabilidad del querellante supervisar esta labor.

6. El jefe inmediato del querellante lo era Pedro Jaime Christian quien dirigía la oficina de Caguas con el título de Jefe de Operaciones de Transportación de la querellada. A esa oficina el querellante remitía el informe diario de las horas trabajadas y recibía la nómina y el importe en dinero de los jornales para el pago a los distintos obreros y empleados.

7. El querellante intervino en la discusión y firma de algunos convenios colectivos suscritos con la Unión Obrera contratante según surge de la prueba documental ofrecida en evidencia.

8. El salario semanal percibido por el querellante durante el tiempo que trabajó para la querellada fué el siguiente:

(1) De febrero de 1955 a enero 5 de 1957—$60.00 semanales.

(2) De enero 16 de 1957 a 19 de enero de 1962—$75.00 semanales.

(3) De enero 20 de 1962 a 29 de mayo de 1962—$80.00 semanales.

. . . . . . . .

11. La prueba presentada por las partes no deja lugar a dudas en el sentido de que el querellante desempeñaba funciones de supervisión de la oficina que la querellada tenía establecida en Humacao. En este sentido cabe señalar que el querellante estaba encargado de la distribución del trabajo, de la supervisión de la labor de los empleados y de la preparación de documentos necesarios para llevar a cabo las operaciones de la querellada en forma ordenada. Por otro lado, la preponderancia de la prueba demuestra en forma que no deja lugar a dudas que la inmensa mayoría de las tareas realizadas por el querellante no caían propiamente en la esfera ejecutiva. *Y ello es así, entre otras razones, porque las gestiones realizadas por el querellante estaban subordinadas a la oficina de Caguas sin que interviniera en la ejecución de sus labores el ejercicio de una discreción casi absoluta por parte del querellante."* (Énfasis suplido.)

Por su lenguaje y contenido, preciso es apuntar que la determinación de hecho undécima (11) goza de la naturaleza dual de una determinación factual y conclusión de derecho que se nutre de las determinaciones de hechos que le anteceden. Sin invadir ni menoscabar tales determinaciones, su lectura revela que el recurrido López desarrollaba un número sustancial de gestiones de oficina y supervisión que obviamente requerían el ejercicio de un alto grado de discreción. A tal efecto notamos que la única expresión en que la sala sentenciadora fundamenta su conclusión de ausencia de discreción, es en la comunicación que todas las mañanas el querellante hacía por teléfono al Sr. Pedro Jaime Christian de la oficina de Caguas, para recibir instrucciones con respecto a la labor que debía reali-

zarse durante el día. Sin embargo, se infiere razonablemente de la prueba, que estas instrucciones eran con el solo propósito de coordinar con dicha oficina el movimiento y la máxima utilización de los vehículos de arrastre de la querellada en la fase de recogido y distribución de carga, ya que el querellante López no tenía ni podía tener una visión total e integral de todas las actividades de la empresa. T.E. págs. 65–66.

No podemos coincidir con la premisa inarticulada del tribunal sentenciador que por razón de la llamada matutina, las gestiones del querellante estaban a tal grado subordinadas a las órdenes de la oficina de Caguas, que inhibían su discreción. Al contrario, sus funciones, el carácter de las actividades que desarrollaba en la oficina de Humacao y la variada fluidez de situaciones diarias que acontecían, tienden a señalar un uso amplio y constante de discernimiento, y no el mero ejercicio discrecional de carácter limitado normalmente inherente en la supervisión de otras personas.

Tomando como base los hechos considerados probados por el tribunal a quo, fallamos que estaba presente el requisito de discrecionalidad.

Respecto al requisito restante—facultad de emplear, despedir o recomendar personal—el tribunal no hizo conclusión alguna, debido posiblemente a que consideró que estando ausente el requisito de "discrecionalidad" ello lo hacía innecesario. En vista de que tenemos ante nosotros toda la evidencia documental y testifical, estamos en libertad de formular nuestra propia determinación al respecto. *García Calderón* v. *Galiñanes Hnos.*, 83 D.P.R. 318 (1961). Veamos:

Aun cuando el querellante, a preguntas de su abogado, negó el tener la facultad de contratación y despido o recomendación al efecto (T.E. pág. 28), es incontrovertido que el capataz que actuaba bajo sus órdenes nombrado Santiago Dávila (T.E. pág. 60), de acuerdo al carácter del trabajo diario que hubiera que realizarse, seleccionaba y contrataba los obreros para las funciones de carga y descarga. (T.E. págs. 37, 38 y

39.) Tampoco está en controversia, por testimonio del propio querellante, que él instruía al capataz que seleccionara determinado número de obreros, dejándole a su discreción a quiénes en particular escogía, y posteriormente despedía. (T.E. págs. 67, 68; 201–202.) Surge también de la transcripción, ciertas manifestaciones incompletas del querellante indicativas de que recomendaba las personas a ocupar el puesto de Secretaria en su oficina, siendo indubitado el hecho de que intervino en la selección de quien fuera su esposa. (T.E. pág. 72.)

■ De la evidencia presentada concluímos que el querellante López tenía los atributos de contratar y despedir obreros. No puede negar tal facultad amparándose en que ello le correspondía al capataz Dávila. Nos preguntamos: ¿Si el capataz estaba directamente bajo sus órdenes y recibía la encomienda de seleccionar o prescindir de los obreros, de dónde emanaba tal autoridad? La única respuesta lógica e indefectible señala hacia el recurrido López quien obviamente delegó a Dávila tales funciones.([4]) El criterio rector constituye la existencia de tal autoridad, y no si se utilizó por propia voluntad, delegación o por no haber surgido la oportunidad. *Mooney* v. *Preston Trucking Co.*, 215 F.Supp. 568, 572 (1963).

■ Concurriendo en el caso de autos todos los requisitos que encierra la definición de un "ejecutivo", bajo la ley y el reglamento federal, *procede revocar la sentencia de 19 de septiembre de 1968 y en su lugar declarar sin lugar la querella. Fernández, Jr.* v. *U.T.M.*, 100 D.P.R. 356 (1972).

---

([4]) Esta posición inconsistente del Sr. López de *ser y no ser* se trasluce a través de todo el proceso, siendo ejemplarizante una respuesta que dió en el directo en el sentido de que a la fecha del proceso judicial, no sabía la naturaleza del trabajo que iba y había realizado. (T.E. pág. 33.) Para una persona de inteligencia y sentido común promedio, que en ocasiones de manera oportuna obvió o verbalizó adecuadamente preguntas comprometedoras, que firmaba como *Superintendente de Transportación de Humacao*, que preparaba nóminas, que intervino en la discusión y suscribió dos convenios colectivos a nombre de la gerencia en unión al presidente y vicepresidente, y desempeñaba otras funciones de supervisión, resulta inexplicable tal respuesta.

No es aplicable al caso de autos la medida de la "regla de mayor beneficio" expuesta en *Sánchez* v. *Best Price Co., Inc.,* 102 D.P.R. 379 (1974) pues su ámbito está limitado a las materias relacionadas con salario mínimo por horas y a la jornada semanal de trabajo.([5])

---

([5]) El caso de *Sánchez,* supra, no resuelve que la medida de la "regla de mayor beneficio" sea pertinente en la determinación de si una persona es un ejecutivo. La mención que sobre tal regla se hace al inicio de dicha opinión, debe entenderse con relación a la computación y fórmula para determinar las horas comprendidas en la semana regular de trabajo.