CC-98-140                                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| CESAR J. ALMODOVAR, ETC.<br>     Demandante-Peticionario<br><br>     V.<br><br>MARGO FARMS DEL CARIBE, INC.<br><br>     Demandado-Recurrida | Certiorari<br><br>99TSPR55 |

Número del Caso: CC-98-140

Abogados de la Parte Peticionaria: Lcdo. Andrés Espinosa Ramón

Abogados de la Parte Recurrida: Lcda. Joanna Bocanegra Ocasio
(Bird Bird & Hestres)

Abogados de la Parte Interventora:

Tribunal de Instancia:  Subsección de Distrito Sala de Toa Alta

Juez del Tribunal de Primera Instancia: Hon. Rafael Angel Flores Díaz

Tribunal de circuito de Apelaciones: II – Bayamón – Panel I

Juez Ponente: Panel

Panel integrado por:  Pres. Juez Sánchez Martínez y los Jueces Broco
Oliveras y Urgell Cuebas

Fecha: 4/14/1999

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


César J. Almodovar, Etc.

    Demandante-Peticionario


        vs.                         CC-98-140        CERTIORARI


Margo Farms del Caribe, Inc.

    Demandado-Recurrida


Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.


        San Juan, Puerto Rico, a 14 de abril de 1999.


        Nos toca determinar el alcance de la Ley de Horas y Días de Trabajo de Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 et seq, respecto a trabajadores del país que desempeñan parte de sus labores fuera de Puerto Rico.


                                I

        El 26 de diciembre de 1988, José Rijos Ortiz comenzó a trabajar para Margo Farms del Caribe, Inc. (Margo), que es una corporación dedicada a la siembra, cultivo e instalación de plantas ornamentales, con oficinas en el barrio Cerro Gordo de Vega Alta, Puerto Rico.

Desempeñaba sus labores bajo la dirección del supervisor del proyecto particular de jardinería al cual estuviese asignada su brigada de trabajadores. Al inicio de su empleo, Rijos Ortiz trabajó en proyectos de jardinería en distintos lugares de Puerto Rico, por espacio de varios meses. Luego, fue enviado por su patrono a trabajar en un proyecto que Margo tenía en la vecina isla de Santa Cruz, Islas Vírgenes. Rijos Ortiz dejó de trabajar para Margo el 30 de agosto de 1991.

Surge de los autos del caso que a Rijos Ortiz se le pagaba por horas de servicio rendido. Durante el tiempo que estuvo empleado con Margo su compensación fluctuó desde $4.25 a $5.00 por hora. El cómputo de las horas trabajadas se hacía por el patrono a base de una tarjeta de asistencia. Diariamente Rijos Ortiz tenía que marcar su tarjeta de asistencia mediante el reloj marcador que tenía el patrono para tales fines.

También surge de los autos que Rijos Ortiz trabajaba distintas jornadas semanales. Hubo muchas semanas que trabajó en exceso de 40 horas; en otras trabajó sólo 32 horas.

Rijos Ortiz se querelló contra Margo. Adujo que el patrono no le había pagado a tipo doble las horas extras que había trabajado para dicha empresa. El Departamento del Trabajo y Recursos Humanos de Puerto Rico (Departamento) investigó la querella referida y determinó que el patrono había incurrido en la falta imputada. Específicamente determinó que Margo le adeudaba $6,267.13 a Rijos Ortiz por

concepto de horas extras. El Departamento procedió entonces a enviarle varias cartas de cobro a Margo, con fechas de 21 de octubre de 1992, 2 de marzo de 1993 y 13 de mayo de 1993, sin resultado alguno.

El 11 de agosto de 1995, el Secretario del Trabajo y Recursos Humanos presentó una querella contra Margo ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Toa Alta, en representación de Rijos Ortiz y para su beneficio. Reclamó la deuda salarial de $6,267.13, más una suma igual por concepto de penalidad, a tenor con las disposiciones de la Ley de Horas y Trabajo de Puerto Rico (Ley), supra. Margo contestó la querella y alegó, en esencia, que Rijos Ortiz no tenía derecho a compensación por tipo doble de sus horas extras porque era un **supervisor** que no estaba amparado por la Ley en cuestión; y porque dicha Ley tampoco le aplicaba a un empleado como Rijos Ortiz, quien **desempeñó la mayor parte de su trabajo fuera de Puerto Rico**.

La vista en su fondo ante el tribunal de instancia se celebró el 2 de octubre de 1996. Las partes sometieron por estipulación copia de los talonarios de los cheques de pago de salarios a Rijos Ortiz, que tenían el desglose de las horas trabajadas y el tipo de compensación por hora pagada. **Margo no presentó prueba testifical**. Se limitó a contrainterrogar los testigos del querellante. Este presentó dos testigos: (1) el investigador de normas de trabajo del Departamento que estuvo a cargo del caso (investigador), un funcionario adiestrado en legislación

laboral, con siete (7) años de experiencia en el Negociado de Normas de Trabajo;  y (2) el propio Rijos Ortiz.

Terminada la vista, Margo solicitó la desestimación de la demanda, al amparo de lo dispuesto en el inciso (c) de la Regla 39.2 de Procedimiento Civil de Puerto Rico.  El foro de instancia escuchó los argumentos de ambas partes, y procedió de inmediato a desestimar la demanda.  Tres meses y medio más tarde, el 22 de enero de 1997, dicho foro dictó una sentencia de una página.  Reconoció que Margo no había ofrecido prueba testifical sino que había presentado la moción de desestimación aludida, y resolvió que:

> "Escuchados los argumentos y **tomando en consideración el testimonio del querellante** el Tribunal declara con lugar la solicitud del querellado y ordena la desestimación de esta reclamación".  (Enfasis suplido).

Así las cosas, el 6 de febrero de 1997 el querellante solicitó al Tribunal de instancia que hiciera determinaciones de hechos adicionales.  Margo se opuso vehementemente.  Enfatizó que la mayor parte del trabajo realizado por Rijos Ortiz había ocurrido fuera de Puerto Rico, por lo que la Ley no lo amparaba.  Añadió que el testimonio de Rijos Ortiz no era creíble.  El querellante contestó la oposición de Margo aludida e insistió en las determinaciones de hechos adicionales que había solicitado.  El 17 de marzo de 1997 el foro de instancia emitió una resolución para formular **"las determinaciones de hechos y conclusiones de derecho iniciales del caso"**.  Expresamente dispuso que esta resolución **enmendaba** la sentencia dictada antes en el caso de autos.

En esencia, en la resolución aludida el foro de instancia determinó lo siguiente:

(1)    Que el testimonio del investigador del Departamento "resultó impreciso y vago", y que "no ofreció apoyo a la reclamación del querellante". Añadió que la admisión que el contable de Margo le hizo al investigador, y que éste relató en la vista, **en el sentido de que a Rijos Ortiz se le debían horas extras**, resultaba "algo increíble".

(2)    Que en su testimonio Rijos Ortiz había admitido que tenía la supervisión de los obreros de su brigada y que podía **recomendar** su contratación y despido; pero que "no le mereció crédito alguno al Tribunal" el testimonio en contrario de Rijos Ortiz.

Surge de la exposición narrativa de la prueba aprobada por el foro de instancia que el resto del testimonio de Rijos Ortiz en lo pertinente fue en el sentido de que Rijos Ortiz se dedicaba en su trabajo con Margo principalmente a sembrar grama y plantas;  que sus funciones de "supervisor" se limitaban a asignarle a los obreros de su brigada el trabajo de jardinería que tenían que realizar en un proyecto;  que él no sabía si sus recomendaciones de contratación y despido respecto a los obreros aludidos se tomaban en cuenta;  que los supervisores del proyecto, que le daban a Rijos Ortiz las instrucciones que él tenía que cumplir, estaban pendientes de su trabajo pero no se ponían a sembrar grama y plantas;  que su posición era realmente la de un empleado; y que en la deposición que le había tomado el patrono había dicho que él era supervisor debido a que en los talonarios de los cheques  con los cuales se le pagaba su salario, se indicaba que él era un supervisor.

Con arreglo a las determinaciones de hechos aludidas, el foro de instancia concluyó que estaba "plenamente convencido que el querellante desempeñó la posición de supervisor". Reiteró que la credibilidad de Rijos Ortiz "quedó totalmente comprometida, **por lo que su testimonio no le mereció crédito alguno al Tribunal**." Resolvió que como supervisor Rijos Ortiz no tenía derecho a reclamar compensación extraordinaria por las horas extras trabajadas; y que, además, la Ley sobre horas extras no le aplicaba porque Rijos Ortiz había admitido que gran parte del tiempo que laboró para Margo lo hizo fuera de Puerto Rico.

Inconforme con el dictamen aludido del foro de instancia, el querellante acudió ante el Tribunal de Circuito de Apelaciones. Impugnó la desestimación de la querella al amparo de la Regla 39.2(c) de Procedimiento Civil; impugnó la apreciación de la prueba que hizo el foro de instancia; impugnó la determinación de que el querellante era un supervisor exento de la Ley; y finalmente, impugnó la determinación de que al querellante no le amparaba la Ley en cuestión por haber realizado labores fuera de Puerto Rico.

El foro apelativo confirmó el dictamen de instancia. El querellante entonces acudió ante nos oportunamente y, en esencia, cuestionó el dictamen de dicho Foro de que Rijos Ortiz estaba exento de las disposiciones de la Ley en cuestión.

El 22 de mayo de 1998 expedimos el recurso presentado por el querellante, a los fines de revisar la sentencia del

foro apelativo. El 5 de octubre de 1998 acogimos la solicitud de certiorari del querellante como su alegato, y el 6 de octubre Margo presentó el suyo. Con el beneficio de sus escritos, pasamos a resolver.

II

En Puerto Rico, el derecho de los trabajadores a recibir compensación extraordinaria por trabajo realizado en exceso de una jornada laboral de ocho horas diarias, es en la actualidad de origen constitucional. La Sección 16 del Artículo II de nuestra Constitución expresamente dispone que el trabajador que labore por más de ocho horas diarias recibirá una compensación extraordinaria por el exceso de este límite, "que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley". En reconocimiento de la necesidad de ofrecerle al trabajador puertorriqueño una protección social estable y duradera, al adoptarse la Constitución del Estado Libre Asociado de Puerto Rico en 1952, se elevó a rango constitucional la garantía que ya tenía la clase trabajadora mediante legislación referente a la jornada diaria de ocho horas de trabajo. Autoridad de Comunicaciones v. Tribunal Superior, 87 D.P.R. 1, 17 (1962). Se quiso consignar en la propia Constitución los conocidos derechos sobre la jornada de trabajo "con el fin de prevenir contra posibles vulneraciones futuras" que pudiesen ocurrir por fiat legislativo. A.D. Miranda, Inc. v. Falcón, 83 D.P.R. 735, 741 (1961). Se trata, pues, de una norma constitucional

que tiene el propósito fundamental de darle arraigo y solidez a la protección de la gran masa trabajadora del país, Municipio de Guaynabo v. Tribunal Superior, 97 D.P.R. 545, 549 (1969), y que subraya la alta dignidad del esfuerzo humano en nuestro ordenamiento jurídico. Mercado Vega v. U.P.R., 128 D.P.R. 273, 284 (1991). Se ofrece así "efectiva protección de la salud, seguridad y vida de los trabajadores, mediante la eliminación de condiciones de explotación del trabajador a base de jornadas excesivas". López Figueroa v. Valdés, 94 D.P.R. 238, 251-252 (1967). Por ser un "mandato constitucional", Autoridad de Comunicaciones v. Tribunal Superior, supra, a la pág. 11, que persigue "un propósito social tan importante", Municipio de Guaynabo v. Tribunal Superior, supra, nos corresponde asegurar que no ha de transgredirse o socavarse mediante interpretaciones improcedentes o meras pretensiones patronales, id., a la pág. 549.

La Ley de Horas y Días de Trabajo de Puerto Rico (Ley), citada antes, es la que establece concretamente lo relativo a la jornada de trabajo de empleados y el pago de horas extras. Constituye la concreción vigente del mandato constitucional antes referido. En lo pertinente, dispone dicha Ley que las horas trabajadas diariamente en exceso de ocho serán pagadas a tipo doble. 29 L.P.R.A. sec. 273. Dicha Ley también dispone expresamente que todo empleado que reciba una compensación menor que la que ésta fija, tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de

liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogados del procedimiento.   29 L.P.R.A. sec. 282.

La Ley excluye a los ejecutivos, administradores y profesionales del término "empleado", y delegaba en la Junta de Salario Mínimo de Puerto Rico la definición concreta de quiénes son estos empleados gerenciales que no están amparados por el derecho a recibir compensación extraordinaria por horas extras.   29 L.P.R.A. sec. 288.[1] Mediante el Reglamento Núm. 13, la Junta aludida definió los términos que estaban vigentes al ocurrir los hechos del caso de autos.   Es a dicho Reglamento al que debemos acudir inicialmente para determinar si Rijos Ortiz es o no un empleado con derecho al referido pago de horas extras. Santiago Matos v. Commonwealth Oil Refining Co., 114 D.P.R. 267, 268-269 (1983).

En lo pertinente, el Reglamento Núm. 13 aludido disponía lo siguiente:

> Artículo IV – Definición de "Ejecutivo"
>
> . . . .
>
> B.   En Actividades Agrícolas
>
> 1.   Cualquier empleado en actividades agrícolas que reúna los siguientes requisitos:
>
>    (a)   que como encargado, supervisor, capataz o mayordomo de una finca, tenga a su cargo,

---

[1] El 27 de julio de 1998 se aprobó legislación para eliminar la Junta de Salario Mínimo de Puerto Rico.  A partir de la vigencia de dicha legislación, la facultad para definir los términos referidos se le concede al Secretario del Trabajo y Recursos Humanos.

total o parcialmente la supervisión de la misma; y

(b)    que tenga autoridad para emplear y despedir empleados o cuyas sugestiones y recomendaciones sobre el empleo, despido, mejoramiento, ascenso o cualquier otro cambio en el status de éstos hayan de recibir especial atención; y

(c)    que usual y regularmente ejerza facultades discrecionales; y

(d)    cuyo empleo sea de carácter permanente y no estacional; y

(e)    que reciba por sus servicios una compensación fija equivalente a un salario semanal no menor de doscientos dólares ($200). (Enfasis nuestro.)

Las disposiciones legislativas y reglamentarias referidas han sido interpretadas por este Tribunal en varias ocasiones antes. Hemos resuelto que para que surja la condición de "ejecutivo", que excluye a un empleado del pago de compensación extraordinaria por horas extras, es necesario que concurran **todos** los requisitos que el Reglamento enumera. La exclusión del beneficio laboral debe surgir de manera clara y manifiesta. Abudo Servera v. A.T.P.R., 105 D.P.R. 728 (1977); López Vega v. F. Vega Otero, 103 D.P.R. 175 ((1974); Sánchez v. Best Price Co., 102 D.P.R. 379, 381 (1974). **Tales exclusiones del beneficio laboral deben interpretarse restrictivamente**, debido a que extender la exclusión a aquellos empleados que no estén claramente incluidos en ella constituye "un abuso del proceso de interpretación o una frustación de la voluntad expresada por el pueblo." Calderón v. Esso Standard Oil Co., 92 D.P.R. 129 (1965); Piñan v. Mayagüez Sugar Co., 84

D.P.R. 89, 97 (1961); Sierra, Comisionado v. Llamas, 73 D.P.R. 908, 916 (1952). La determinación de si el empleado es un "ejecutivo" requiere un examen de todos los términos, condiciones y funciones del empleo. López Vega v. F. Vega Otero, supra; Sierra v. Mario Mercado e Hijos, 81 D.P.R. 314, 325 (1959). De ningún modo puede hacerse sólo a base del título o clasificación que el patrono dé al empleado, o el que éste se dé a sí mismo. Véase, López Santos v. Tribunal Superior, 99 D.P.R. 325, 334 (1970).

Con toda la anterior normativa en mente, examinemos la situación del caso de autos.

III

Considerados en conjunto los hechos que surgen del expediente, no puede resolverse que Rijos Ortiz era un "ejecutivo" exento del derecho a recibir compensación extraordinaria por las horas extras trabajadas, como erróneamente determinaron tanto el foro de instancia como el foro apelativo. Por un lado Rijos Ortiz no cumplía con el requisito reglamentario de recibir **una compensación semanal fija no menor de $200**. Los talonarios de pago que constan en autos—y que fueron estipulados por ambas partes-- no dejan duda alguna de que Rijos Ortiz no tenía un salario semanal fijo. Se le pagaba por horas de trabajo rendido, que podían variar de semana en semana. En varias semanas, su pago fue mucho menos de $200. Este dato, de fácil comprobación, es de por sí decisivo de la cuestión ante nos. Ya antes hemos resuelto que si el empleado no recibe cierta

compensación semanal fija, no cualifica como ejecutivo. Sánchez v. Best Price Co., Inc., supra, a la pág. 382; López Santos v. Tribunal Superior, supra, a las págs. 331–332; Sierra v. Mario Mercado e Hijos, supra, a las págs. 322–323. Véase, además, Castro v. Lykes Lines Agency, 145 F.Supp. 94 (1956). Ninguno de los foros a quo consideró este asunto, a pesar de que ambos contaron con los documentos relativos a todos los pagos que Margo le hizo a Rijos Ortiz.[2] Erraron al proceder de este modo.

Por otro lado, es evidente también que Rijos Ortiz tampoco cumplía con otro requisito reglamentario, que es el que requiere que **el empleado ejerza facultades discrecionales usual y regularmente**, para que pueda ser considerado como "ejecutivo". Aquí Rijos Ortiz aparentemente tenía a su cargo la coordinación de una cuadrilla de obreros que hacían labores de jardinería igual que él.[3] Pero ello no le proveía la discreción sustancial a la que alude el referido requisito. Ya antes hemos señalado que para que se cumpla con este requisito no basta que el empleado "tenga alguna autoridad en la empresa no importa lo pequeña que ésta sea." López Santos v.Tribunal Superior,

---

[2] En vista de que tenemos ante nosotros la evidencia documental correspondiente, estamos en libertad de formular nuestra propia determinación al respecto. López Vega v. Vega Otero, Inc., supra, pág. 181; García Calderón v. Galiñanez Hnos., 83 D.P.R. 318 (1961).

[3] A los fines de resolver, y conforme las "determinaciones de hechos" formuladas por el foro de instancia, asumimos que el peticionario era un "supervisor" de una cuadrilla de obreros de jardinería y en efecto coordinaba sus labores, a pesar de que las referidas "determinaciones" eran algo contradictorias y dudosamente fundamentadas.

supra, a la pág. 335. Es necesario que la discreción sea un elemento sustancial del cargo que se desempeña, y no una simple rutina, id. pág. 334; Piñan v. Mayagüez Sugar, supra, a la pág. 96. No vemos como la supervisión de unas sencillas labores de sembrar grama y plantas constituía el ejercicio del alto grado de discreción que hemos exigido antes para determinar que se cumplió con este requisito reglamentario. López Vega v. F. Vega Otero, supra, a la pág. 180.

En resumen, pues, no está de modo alguno justificada la determinación de los foros de instancia y apelativo de que Rijos Ortiz era un supervisor, exento como "ejecutivo" de la obligación patronal de compensarle extraordinariamente las horas extras que había trabajado. Rijos Ortiz no cumplía claramente con al menos dos de los cinco requisitos que fija el referido Reglamento Núm. 13 para ello. Para que pudiese excluírsele de la protección de la Ley, era necesario que

Rijos Ortiz satisfaciese todos los cinco requisitos referidos, lo que no sucedió aquí.


                              IV

Lo anterior no concluye nuestro examen de los asuntos ante nos. El foro de instancia desestimó la querella contra Margo no sólo por entender que Rijos Ortiz como supervisor no tenía derecho al pago de compensación extraordinaria por las horas extras que trabajó, sino también por entender que como éste trabajó gran parte del tiempo en Islas Vírgenes,

las disposiciones jurídicas sobre jornada de trabajo no le aplicaban.  Erró también al resolver de este modo.  Veamos.

El foro de instancia llegó a la conclusión en cuestión amparándose en nuestra opinión en <u>Green Giant Co. v. Tribunal Superior</u>, 104 D.P.R. 489, 493 (1975).  Dicho foro aceptó el erróneo planteamiento de Margo de que en la referida opinión este Tribunal había resuelto que la Ley de Horas y Días de Trabajo no protege a trabajadores de Puerto Rico que realicen labores fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico.  Ello, sin embargo, no es precisamente lo que resolvimos allí.

En <u>Green Giant Co. v. Tribunal Superior</u>, <u>supra</u>, examinamos un asunto muy diferente al que nos concierne ahora en el caso de autos.  Allí encaramos la situación de unos **obreros migrantes** que como tal prestaban servicios en labores agrícolas exclusivamente en fincas ubicadas en los estados de Delaware y Maryland.  Dichos trabajadores habían sido reclutados en Puerto Rico por la compañía Green Giant que tenía sus operaciones en los estados referidos.  Los trabajadores así reclutados tenían que trasladarse a los estados aludidos, para desempeñar sus labores allá.

En este contexto, resolvimos que los contratos de estos obreros migrantes se regían por las leyes del estado donde habrían de prestar sus servicios.  Indicamos que Puerto Rico no tenía <u>contactos dominantes</u> en esta situación para imponer condiciones de trabajo por encima de las que prevaleciesen en el área de empleo de estos trabajadores.  Indicamos, además, que pretender imponerle las leyes de Puerto Rico a

estos patronos foráneos sólo tendría el efecto de cerrarle las oportunidades de empleo a estos obreros migrantes, que entonces no serían contratados por dichos patronos. Finalmente, determinamos que esta situación de obreros migrantes se regía por la Ley Núm. 87 de 22 de junio de 1962, 29 L.P.R.A. sec. 526 y sigs., que autoriza al Secretario del Trabajo a intervenir en la contratación de obreros migrantes por patronos de Estados Unidos, para asegurarse que a éstos obreros migrantes <u>se le concederán</u> <u>los mismos salarios y condiciones de trabajo que disfrutan</u> <u>los trabajadores que son naturales de o residentes del lugar</u> <u>donde se han de emplear los obreros puertorriqueños</u>. En otras palabras, que la política pública del Estado Libre Asociado en el caso de los obreros migrantes es la de asegurar que cuando éstos se trasladen a Estados Unidos, no han de sufrir discriminación en las condiciones de empleo del lugar donde trabajan por el mero hecho de ser obreros migrantes. Expresamente resolvimos que la política pública aludida no era la de imponer allá sólo para los trabajadores migrantes las condiciones de trabajo requeridas aquí para toda nuestra clase trabajadora. Es evidente que ninguna de las consideraciones aludidas en que fundamentamos nuestro dictamen en <u>Green Giant v. Tribunal Superior</u>, es pertinente a la situación del caso de autos. Atañen sólo a un contexto muy particular.

Fue en este limitado y preciso contexto que resolvimos que las normas de compensación extraordinaria por horas extras de nuestro ordenamiento jurídico no son "de

aplicación a los obreros migrantes puertorriqueños que rinden labores agrícolas fuera de Puerto Rico." Este dictamen y sus fundamentos obviamente nada tiene que ver con los hechos del caso de autos. Sencillamente Rijos Ortiz **no es un obrero migrante**. La circunstancia **temporal** de que un trabajador contratado por una empresa autorizada a hacer negocios bajo las leyes de Puerto Rico, sea asignado por ésta a realizar labores fuera de la isla, no lo convierte en un obrero migrante. El obrero migrante, que es a quien aplica nuestro dictamen en Green Giant Co. v. Tribunal Superior, supra, es un trabajador de rasgos muy particulares. Es aquél que ha sido reclutado precisamente para trabajar fuera de Puerto Rico, mediante un contrato de empleo en masa para obreros que han de laborar en tareas agrícolas estacionales en el exterior, y que fue reclutado con la debida autorización del Secretario del Trabajo y Recursos Humanos, conforme lo dispone el Artículo 4 de la referida Ley Núm. 87, 29 L.P.R.A. 530. Nada en nuestra opinión de Green Giant Co. v. Tribunal Superior, supra, permite suponer que nuestro dictamen allí se extienda a otros trabajadores que no sean los obreros migrantes aludidos. Resolver de otra forma sería abrir las puertas a que se menoscabe gravemente el mandato fundamental de la Sec. 16 del Artículo II de nuestra Constitución. Resolvemos, pues, que la Ley de Horas y Días de Trabajo de Puerto Rico aplica a Rijos Ortiz y otros como él.

V

Por los fundamentos expuestos, se dictará sentencia para revocar la del foro apelativo en el caso de autos del 28 de enero de 1998, y la del foro de instancia del 22 de enero de 1997, según enmendada por la resolución del 17 de marzo de 1997.  Se devolverá el caso al foro de instancia para que determine la suma exacta adeudada por horas extras no compensadas al tipo doble, más una cantidad igual con arreglo a la penalidad dispuesta por la Ley, más las costas, gastos y honorarios de abogados que procedan, todo ello a favor del peticionario, conforme a lo aquí resuelto.


                                    JAIME B. FUSTER BERLINGERI
                                    JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

César J. Almodovar, Etc.

    Demandante-Peticionario


      vs.                     CC-98-140        CERTIORARI


Margo Farms del Caribe, Inc.

    Demandado-Recurrida


SENTENCIA


San Juan, Puerto Rico, a 14 de abril de 1999.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se dicta sentencia para revocar la del foro apelativo en el caso de autos del 28 de enero de 1998, y la del foro de instancia del 22 de enero de 1997, según enmendada por la resolución del 17 de marzo de 1997.

Se devuelve el caso al foro de instancia para que determine la suma exacta adeudada por horas extras no compensadas al tipo doble, más una cantidad igual con arreglo a la penalidad dispuesta por la Ley, más las costas, gastos y honorarios de abogados que procedan, todo ello a favor del peticionario, conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. Los Jueces Asociados señores Hernández Denton y Corrada del Río concurren sin opinión escrita. El Juez Asociado señor Rebollo López no interviene.


                          Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo