VOTO DISIDENTE EMITIDO POR LA JUEZ CARMEN ANA PESANTE MARTINEZ - 2005 DTA 15
San Juan, Puerto Rico, a 22 de noviembre de 2004
Aun cuando coincido con la opinión mayoritaria en cuanto a modificar la sentencia apelada a modo de reducir a $10,000 y $1,621 las cantidades otorgadas por el Tribunal de Primera Instancia (en adelante, “TPI”) por concepto de daños y perjuicios y concesión de costas, respectivamente, no puedo suscribir la opinión mayoritaria. Por entender que la apelada reúne los requisitos reglamentarios de una administradora, y, como tal, está exenta del pago de horas extras, respetuosamente emito un voto disidente en cuanto a las cantidades concedidas por concepto de reclamación salarial.
I
En el recurso ante nuestra consideración debemos analizar, en esencia, si la apelada era una administradora exenta, según se define ese término en el Artículo III del Reglamento Núm. 13 de la Junta de Salario Mínimo (Cuarta Revisión, 1990), por lo que no tenía derecho a los beneficios reclamados. Durante el período en que la apelada laboró en Elmendorf, ésta llevó funciones de contralor y estuvo a cargo del Departamento de Contabilidad de la empresa querellada. Un análisis de las funciones ejercidas por la apelada, según se desprende de la exposición narrativa de la prueba y de la transcripción, refleja que las mismas eran de gran complejidad e importancia directamente relacionadas con las normas de las operaciones generales de Elmendorf y de los clientes. Veamos con cierto detenimiento el derecho aplicable a la situación de autos.
*782 Al adoptarse la Constitución del Estado Libre Asociado de Puerto Rico en 1952 se elevó a rango constitucional la garantía que ya tenía la clase trabajadora mediante legislación referente a la jomada diaria de ocho horas de trabajo y el pago de horas extras. La Sección 16 del Artículo II de nuestra Constitución expresamente dispone que el trabajador que labore por más de ocho horas diarias recibirá una compensación extraordinaria por el exceso de este límite, que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley. De esta forma se quiso consignar en la propia Constitución los conocidos derechos sobre la jornada de trabajo con el fin de prevenir contra posibles vulneraciones futuras que pudiesen ocurrir por disposición legislativa. Almodóvar v. Margo Farms del Caribe, Inc., 148 D.P.R. 103 (1999).
A su vez, la Ley Núm. 379 de 15 de mayo de 1948, conocida como la “Ley de Horas y Días de Trabajo de Puerto Rico” constituye la concreción vigente del mandato constitucional antes referido. En lo pertinente, la misma dispone que las horas trabajadas diariamente en exceso de ocho serán pagadas a tipo doble. Establece también que todo empleado que reciba una compensación menor que la que ésta fija, tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogado del procedimiento. Almodávar v. Margo Farms del Caribe, supra.
Ahora bien, la Ley Núm. 96 de 26 de junio de 1956, según enmendada, conocida como Ley de Salario Mínimo, excluye de sus disposiciones a los administradores, ejecutivos y profesionales, y delega en la Junta de Salario Mínimo la definición de dichos términos. En virtud de ello, mediante el Reglamento Núm. 13, aprobado el 29 de junio de 1990, la Junta de Salario Mínimo definió los mismos y es conforme a ello que se debe evaluar la aplicabilidad de la ley. Santiago v. CORCO, 114 D.P.R. 267 (1983). De otra parte, el Artículo III del Reglamento Número 13 de la Junta de Salario Mínimo, define al administrador de la siguiente manera:

“A los fines de la Sección 30 (b) de la Ley de Salario Mínimo de Puerto Rico (Ley 96 de 26 de junio de 1956, enmendada), el término administrador significa: Cualquier empleado que reúna los siguientes requisitos:

(a) que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y

(b) que usual y regularmente ejerza discreción y juicio independiente; y

(c) 1- que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de administrador o de “ejecutivo”, según estos términos se definen en el presente reglamento; o

2- que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

3- que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y

(d) que no dedique más del 20% o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en los Incisos (a), (b) y (c) de este Artículo III; y

(e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.

(f) también significa, cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos 
*783
(a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios. ”

Para que un empleado sea considerado como “administrador” bajo la disposición antes citada, debe cumplir con todos los requisitos enumerados. Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 428 (1999); Almodóvar v. Margo Farms del Caribe, Inc., supra.
En Lehman v. Ehret, Inc., 103 D.P.R. 264 (1975), el Tribunal Supremo tuvo ante sí la tarea de interpretar el carácter de las labores que un querellante debía llevar a cabo a modo de que cumplieran con las condiciones necesarias para que pasara de ser considerado empleado no exento a ejecutivo o administrador exento, según las definiciones contenidas en el antes citado Reglamento. Similar al reclamo de Rivera Febus en la situación ante nos, Daniel Lehman presentó una querella contra su patrono, Ehret, Inc., reclamando el pago de horas extras trabajadas y vacaciones adeudadas bajo el alegato de ser empleado de la empresa. Por su parte, Ehret adujo que Lehman cualificaba como ejecutivo, por lo que no tenía derecho al pago de horas extras, bajo el supuesto de que las hubiese trabajado o no. El TPI sentenció que por no reunir los requisitos para ser considerado ejecutivo, “’... menos aún podía ser administrador[,]”’ Lehman v. Ehret, Inc., supra, por lo que entendió innecesario interpretar la definición que el Reglamento le otorga a un administrador, tarea a la que se dio el Tribunal Supremo mediante la referida opinión.
Del propio testimonio de Lehman, se dedujo que éste trabajaba más de un cincuenta por ciento del tiempo en tareas no manuales en la dirección y las operaciones generales de la funeraria realizando en dicha capacidad las mismas, lo que no necesariamente lo convertía en ejecutivo, sino en un administrador, conforme al Reglamento.
En virtud de ello, el Tribunal Supremo modificó la sentencia recurrida y aclaró que un empleado es administrador cuando realiza las siguientes funciones:
“(1) Supervisaba y dirigía las labores del empleado permanente, a tiempo completo que había, y de aquellos otros que por tiempo parcial ocasionalmente contrataba y despedía.

(2) Atendía los clientes, suministraba información y concedía o denegaba crédito por servicios.

(3) Recibía pagos por servicios a clientes y gestionaba el cobro de los mismos.

(4) Supervisaba y dirigía los servicios funerarios, coordinando con los cementerios, iglesias, etc. (sic) todo lo relativo a tales servicios.

(5) Disponía del mantenimiento y la compra de materiales necesarios para las facilidades físicas de la funeraria y de los ataúdes.

(6) Estaba autorizado a girar cheques contra la cuenta de la querellada en Aibonito, en unión a otra persona.

(7) Tenía disponible y utilizaba discrecionalmente un fondo de $100.00 en efectivo para asuntos misceláneos (petty cash). [En el presente caso, sería el equivalente a la tarjeta de gasolina y al uso de celular].

(8) No tenía horario fijo ni persona que lo supervisara, pudiendo disponer de su tiempo conforme su mejor criterio.

*784 (Énfasis nuestro.) Lehman v. Ehret, Inc., supra, a las págs. 268-269.
A tono con lo anterior y considerados en conjunto los hechos que surgen del expediente, la apelada Nereida Rivera Febus era administradora exenta del derecho a recibir una compensación extraordinaria por las horas extras trabajadas, como erróneamente determinaron tanto el foro de instancia como la opinión mayoritaria de hoy. Veamos.
Por un lado, Rivera Febus cumplía con el requisito reglamentario de recibir una compensación fija no menor de $200. Mediante el informe pericial preparado por el Sr. Rafael Reyes Limardo, perito admitido por el TPI, consta que durante el período del 30 de diciembre de 1993 al 18 de mayo de 1994, la apelada devengó un sueldo de $350 semanales. A partir del 19 de mayo de 1994 al 4 de diciembre de 1996, ésta devengó un sueldo de $725 semanales. Evidentemente, ambos sueldos reportados exceden por amplio margen los niveles de salario de la llamada “prueba corta” del inciso (f) del Artículo III del Reglamento Núm. 13, supra, para considerar fehacientemente a un trabajador como administrador. Más aún, la compensación fija de $725 semanales representa más del doble de lo que requiere el referido Reglamento en sus incisos (e) y (f).
Por otro lado, es evidente que Rivera Febus también cumplía con otro requisito reglamentario: el que requiere que el empleado ejerza facultades discrecionales usual y reglamentariamente, para que pueda ser considerada como administradora. En la presente situación, las funciones a las que se dedicaba Rivera Febus eran mayormente las siguientes:

“(1) cobro de cuentas corporativas;

(2) preparación y manejo de nómina del personal de la empresa;

(3) recibo de cheques de pago,

(4) entrada de pagos al sistema;

(5) realización de depósitos bancarios;

(6) envío de cartas de cobro a clientes; y

(7) requerimientos de pago por vía telefónica a clientes morosos. ”

Lo anterior queda enmarcado dentro del hecho que las funciones de la apelada adquirieron mayor importancia para el manejo de la empresa a partir del 1994. En vista de ello, la empresa apelante le aumentó el sueldo a la apelada a partir de ese momento a $725 semanales, más gastos, los cuales incluían el uso autorizado de una tarjeta de gasolina y se le relevó de la obligación de hacer constar su hora de entrada y salida de la empresa mediante el mecanismo de ponchar su tarjeta de asistencia diaria como lo hacía inicialmente. Su labor oficinesca inicial se transformó en una de carácter administrativo, al ejercer discreción sobre los aspectos financieros de Elmendorf, con excepción de la preparación de los Estados Financieros y los aspectos contributivos, tarea que llevaba a cabo otro empleado de la mencionada empresa.
Ciertamente, estas tareas se apartan de ser meramente unas donde el empleado tiene “alguna autoridad en la empresa, no importa lo pequeña que ésta sea”. Almodóvar v. Margo Farms del Caribe, Inc., supra, citando a López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970). Las labores ejercidas por Rivera Febus van inexorablemente atadas a la necesidad del ejercicio de un alto grado de discreción que llama y requiere el *785 Reglamento, máxime cuando se trata del manejo de un aspecto tan neurálgico y de envergadura como el que lleva a cabo un contralor a cargo de las finanzas de la empresa. A toda luz, dicho ejercicio equivale a un elemento sustancial del cargo desempeñado por Rivera Febus y no una simple rutina.
Recapitulando, no está justificada la determinación del foro de instancia y la opinión mayoritaria de que Rivera Febus no era un contralor, exenta como administrador de la obligación patronal de compensarle extraordinariamente las horas extras que había trabajado. Almodóvar v. Margo Farms del Caribe, Inc., supra. Queda meridianamente claro que Rivera Febus satisfizo los cinco requisitos que fija el Reglamento Núm. 13 aludido.
Es por ello que respetuosamente disiento de la decisión de mis compañeros de Panel únicamente en el aspecto de confirmar el dictamen del TPI en lo que respecta a que Rivera Febus no es una empleada exenta, sujeta al pago de horas extras, vacaciones y al período de tomar alimentos.
Carmen Ana Pesante Martínez Juez de Apelaciones
ESCOLIOS VOTO DISIDENTE EMITIDO POR LA JUEZ CARMEN ANA PESANTE MARTINEZ 2005 DTA 15
1. Véase, Apelación, índice de Apéndice, Exhibit 22: Moción Informativa para Incluir Anejos..., a las págs. 87-88.
2. Ejemplo de ello es su manejo de las cuentas por cobrar, nómina de empleados, y depósitos bancarios, entre otras tareas de aspecto discrecional.